**CONNELLEE et al. v. MAGNOLIA PETRO-LEUM CO.**

No. 926.

Court of Civil Appeals of Texas. Eastland.

Oct. 14, 1932.

Rehearing Denied Dec. 2, 1932.

Anderson, Orr & McCord, of Fort Worth, for appellants.

Conner & McRae, of Eastland, for appellee.

LESLIE, J.

This suit was instituted by Earn T. Connellee and others June 7, 1930, for the value of oil alleged to have been taken from the plaintiffs' land under a lease contract executed by the plaintiffs in favor of the Magnolia Petroleum Company. The defendant interposed various defenses, among them general denial and res adjudicata. The trial resulted in an instructed verdict in favor of the defendant, and from a judgment thereon this appeal is prosecuted.

The wrong charged to the defendant is that it took the plaintiffs' oil without paying therefor under the one-eighth royalty provision of the lease. More specifically, the plaintiffs' theory as alleged is that the defendant, by making use of a mechanical device known as a vacuum pump, took out of the wells on plaintiffs' land the lighter, more volatile and more valuable portions of the oil, and thus depleted the supply which would or could have been produced naturally, and also decreased the gravity of the oil left in the ground, thereby making it heavier and in a condition that a large part of it could never be recovered. In other words, plaintiffs take the position in this suit that, whatever casing-head gas the defendant is entitled to under the lease for the sum of $25 per well per annum, the same

at most would be merely the amount of casing-head gas that would have "flowed naturally" from said wells, and not the amount of such casing-head gas as was produced by the vacuum pump. It was alleged that the amount of such casing-head gas produced naturally would have been less than 5 per cent. of the amount which was taken by the vacuum pump, and that the defendant fraudulently confused and mixed said products and became accountable to the plaintiff for all the oil and/or gasoline produced by said vacuum pump, and that the plaintiffs were entitled to a one-eighth part of said production, or the value of such an amount, thus produced.

The defendant claimed title by purchase of all the oil, gas, and casing-head gas in place, as well as when recovered and brought to the surface. Its plea of res. adjudicata was based on another suit between the same parties, and growing out of their respective rights and duties under the covenants of the same lease here involved, and which these plaintiffs executed and delivered to the defendant on October 29, 1917. The former suit, its issues and final result appear to have been fully pleaded by both plaintiffs and the defendant on the trial of this case. The plaintiffs proceeded on the theory that the pleadings, judgment, etc., on the former suit disclosed that the instant one was based upon a separate and different cause of action and therefore not subject to the plea of res adjudicata, and the defendant offered the same upon the theory that the same issues of facts and law between these litigants were adjudicated in the former suit and resolved against the plaintiffs, and that, if said issues were not directly involved in the former suit, they were directly incidental to and connected with that cause of action and could and should have been pleaded and determined therein.

The original suit was filed December 15, 1924, later tried, and judgment rendered in favor of the defendant, Magnolia Petroleum Company. An appeal was prosecuted to the Court of Civil Appeals, and the judgment of the trial court reversed. 279 S. W. 597. Error was prosecuted to the Supreme Court, and that court reversed the judgment of the Court of Civil Appeals in an opinion to be found in 11 S.W.(2d) 158. After the original opinion by the Supreme Court, defendants in error made a first and second motion for rehearing, in each of which an opinion was also written by the Supreme Court, and they are to be found in 14 S.W.(2d) 1020, and 20 S.W.(2d) 758. By reference to these opinions a history may be had of the original suit, as well as a clear statement of its object and purpose. In these opinions will also be found the provisions of the oil and gas lease out of which this litigation grows. The statement of facts contains several hundred pages, and it would not serve a useful purpose to undertake to set out in

this opinion a detailed statement of the issues and the testimony presented by this record.

For convenience, and to facilitate a ready understanding of the opinion, two or three brief provisions of the oil and gas lease will be quoted. Among other considerations to be hereafter noticed, the lease recites that the grantors, plaintiffs in this suit, for a consideration of $7,620, "granted, sold and conveyed" to the grantee, defendant herein, "all the oil, gas and other minerals in and under the following lands," the same being described, as well as the interest of each plaintiff therein. With the other rights and privileges under the lease went the "right to enter thereon, open mines, drill wells, lay pipelines and erect all structures and appliances necessary or convenient in searching for, producing, caring for, storing and removing any oil, gas or other minerals found thereon," etc. The lease further provided, in usual form, that, when the grantee completed a well that was a "producer of oil or gas, * * * this grant shall remain in force for the full term and period herein provided, without the payment of any other sums of money or other things than the royalty herein agreed upon and specified; namely, 1/8th of all oil produced and saved, to be delivered free of charge into tanks or pipelines to the grantors' credit; for each well producing gas only, sold or used off the premises, $200.00 per year; for casing-head gas when sold or used off the premises, $25.00 per year for each well, the payment for gas to be made quarterly in advance; for all other minerals, 1/8th of the net profit thereof."

The plaintiffs' right of recovery for defaults alleged in this suit rests primarily on the one-eighth oil royalty provision above. In an answer to the defendant's plea of res adjudicata, the plaintiffs contend specifically that this action is solely for the oil produced in the casing-head gas by the use of the vacuum pump, and that their right to such oil, as was so produced was not considered litigated or determined in the former suit between these parties.

By reference to the pleadings in the former suit, and a careful reading of the opinions rendered therein by our Supreme Court, it is at once apparent that the object of that suit was to recover as for oil under the one-eighth oil royalty clause such amount or the value thereof of the gasoline recovered by manufacturing process from the casing-head gas produced and saved from the wells drilled by the defendant on plaintiffs' lands. In the former suit the gasoline claimed to be oil was taken from the casing-head gas as a whole, and our Supreme Court held, on the facts of the former case, that the Magnolia Petroleum Company, defendant here, was, under the terms of the lease, the owner of and entitled to the casing-head gas, together with all of its constituent elements, including the modicum of oil carried by it in a vaporous form. That the plaintiffs, having parted with the casing-head gas for a valuable consideration, they are not entitled to recover a one-eighth of the gasoline manufactured from such gas as damages, or the value of that amount of such manufactured product. In other words, that court refused to construe the lease contract between the parties to require the lessee, defendant here, to credit lessors, plaintiffs here, with one-eighth of the gasoline manufactured out of casing-head gas, inasmuch as the oil and gas lease in specific terms provided that the lessee should have the same for the payment of $25 per year per oil well.

So much for the former suit. What have we in this one? The plaintiffs have narrowed their original contention. Based upon the holding of the Supreme Court that under the terms of the lease the lessee became the owner of the casing-head gas and the element of oil therein, the plaintiffs here contend that such right of ownership in such oil would be limited to that quantity of oil that would "flow naturally" from such wells in casing-head gas, and would not extend to that larger and excessive amount of oil contained in said gas produced by the fraudulent use of the vacuum pump. For this latter, or so-called excessive amount of oil so produced, plaintiffs seek to recover the one-eighth under the oil royalty provision, or the value of that amount. In other words, regarding gasoline as oil, the object of recovery in the first suit was oil contained in the entire production of casing-head gas, which, in view of plaintiffs' contentions, it may be said was composed of two quantities: (1) That which would have "flowed naturally" in such gas; and (2) that additional and excessive amount produced by the use of the vacuum pump. It was the aggregate of these amounts that was involved in the original suit, but the plaintiffs now institute this suit and seek recovery in some manner based upon the second or excessive amount of oil found in the casing-head gas and attributable to the use of the vacuum pump. From the foregoing it is apparent that the issues presented and the rights litigated in the instant suit were necessarily involved, litigated, and adjudicated in the former suit. This is as true as the axiom that the whole is equal to the sum of its parts and greater than any one of them. It is evident that the plaintiffs now seek to recover something not omitted from the first suit, but embraced therein, and if there be any difference in the pleadings it consists in the fact that in the instant case it is alleged in specific terms that the excessive amount of oil in casing-head gas was produced by the vacuum pump, concerning the use of which no allegation was made in the first suit.

We are all the more persuaded that the

above conclusions are correct in view of the facts that the two suits involved (1) the same parties; (2) the same lands; (3) the same lease; (4) the same royalty provisions relating to the one-eighth oil royalty; (5) the same royalty provision relating to casing-head gas as such; (6) the pleadings in each case charge that casing-head gas is oil or has elements of oil; (7) the pleadings in each case charge the defendant oil company with wrongfully appropriating the oil contained in the gas; (8) its failure to account to plaintiffs for same, or the value thereof; and, (9) in each case the plaintiffs claim to be the owners of the oil and/or gasoline and the one-eighth thereof.

Also, it will be observed that in the former suit it was alleged that the defendants perpetrated the wrongs and conversions by the unauthorized use of a gasoline manufacturing plant, and in the instant case that the conversion was effected by the fraudulent use of a vacuum pump in connection with the manufacturing plant. The exact substance was involved in each instance, and the means of effecting the conversion being different, as alleged, would be immaterial and would not change the cause of action.

From these and other phases of the litigation it is evident that both suits are for the recovery of the value of oil alleged to belong to the plaintiffs, and which oil had been taken from the oil wells in the form of casing-head gas, and alleged to have been converted or appropriated by the defendant without accounting therefor under the provisions of the one-eighth oil royalty clause of the lease. Such being the case, defendant's plea of res adjudicata should have been sustained. Houston Terminal Land Co. v. Westergreen, 119 Tex. 204, 27 S.W.(2d) 526, and authorities therein cited.

The principle of res adjudicata or estoppel by judgment as applied to this case is well illustrated in the opinion in Baltimore Steamship Co. v. Phillips, 274 U. S. 316, 47 S. Ct. 600, 602, 71 L. Ed. 1069. There an injured minor sued for damages alleged to be due for various specified acts of negligence. Trial resulted in a judgment that the accident and resulting injury were not due to the negligence alleged, but were due "to the grossly negligent way in which dunnage was taken out of the hold." Hence recovery was denied; the true grounds of negligence not having been alleged. Subsequently a suit was brought in which all the grounds of negligence were alleged. The original decree was set up as res adjudicata. On the trial in the lower court the plea of res adjudicata was overruled on the ground that the second suit was based upon "a different cause of action." In disposing of the appeal in the second suit, the court used this language:

"Here the court below concluded that the cause of action set up in the second case was not the same as that alleged in the first, because the grounds of negligence pleaded were distinct and different in character; the ground alleged in the first case being the use of defective appliances, and in the second, the negligent operation of the appliances by the officers and co-employees. Upon principle, it is perfectly plain that the respondent suffered but one actionable wrong, and was entitled to but one recovery, whether his injury was due to one or the other of several distinct acts of alleged negligence, or to a combination of some or all of them. In either view, there would be but a single wrongful invasion of a single primary right of the plaintiff, namely, the right of bodily safety, whether the acts constituting such invasion were one or many, simple or complex. A cause of action does not consist of facts, but of the unlawful violation of a right which the facts show. The number and variety of the facts alleged do not establish more than one cause of action so long as their result, whether they be considered severally or in combination, is the violation of but one right by a single legal wrong. The mere multiplication of grounds of negligence alleged as causing the same injury does not. result in multiplying the causes of action. The facts are merely the means, and not the end. They do not constitute the cause of action, but they show its existence by making the wrong appear. 'The thing, therefore, which in contemplation of law as its cause, becomes a ground for action, is not the group of facts alleged in the declaration, bill, or indictment, but the result of these in a legal wrong, the existence of which, if true, they conclusively evince.'' Chobanian v. Washburn Wire Co., 33 R. I. 289, 302, 80 A. 394, 400· (Ann. Cas. 1913D, 730).

"The injured respondent was bound to set forth in his first action for damages every ground of negligence which he claimed to exist and upon which he relied, and cannot be permitted, as was attempted here, to rely upon them by piecemeal in successive actions to recover for the same wrong and injury."

■■ This language is applicable to the facts and issues of the instant case, especially so since it is the plaintiffs' theory that this suit is separate and distinct from the former one. We do not interpret the opinion of the Supreme Court (20 S.W.(2d) 758, 759), as suggesting that the plaintiff had another and different cause of action than that being considered. However, that opinion does clearly indicate that, in the prosecution of the former suit, the plaintiffs' petition was "lacking in the essentials necessary to set forth a cause of action for recovery because of the use of the vacuum pump in producing oil from the leased premises." Evidently a ground of recovery, or element of damages attributable to the use of the vacuum pump, was omitted from the former suit. Whichev-

er it be, the record discloses that the plaintiffs have, at all times, been aware of the use being made by the defendant of the vacuum pump in producing oil and gas from said wells. That fact existed at the time of filing the former suit, and continued to exist apparently down to the time of the trial of the present one. Under such circumstances it is believed that this element of damage or ground of recovery should have been set up in the former suit, for, as said in Stark v. Starr, 94 U. S. 477, 485, 24 L. Ed. 276, "A party seeking to enforce a claim, legal or equitable, must present to the court, either by the pleadings or proofs or both, all the grounds upon which he expects a judgment in his favor. He is not at liberty to split up his demand and prosecute it by piecemeal, or present only a portion of the grounds upon which special relief is sought, and leave the rest to be presented in a second suit, if the first fail. There would be no end to litigation if such a practice were permissible."

For other authorities see Nichols v. Dibrell, 61 Tex. 541; Carson v. McCormick Harvesting Mach. Co., 18 Tex. Civ. App. 225, 44 S. W. 406; Kirberg v. Missouri State Life Ins. Co. (Tex. Civ. App.) 30 S.W.(2d) 663.

■ For the purposes of this suit, and in view of the terms of the lease and the judgment of the Supreme Court in the former appeal, the gasoline produced from the casing-head gas under this lease is not oil in the sense that it would come under the one-eighth oil royalty provision of the lease. Yet it is the right to the oil element, or a portion thereof contained in such gas, that is the gist of the contention in both suits, and which the final judgment in the former litigation decreed to be in the lessee.

■ If we pass from a consideration of the plea of res adjudicata and consider the contention that the defendant fraudulently undertook to produce by means of the vacuum process the plaintiffs' oil disguised as casing-head gas, that contention must be viewed in the light of the provision of the lease granting the defendant the right to enter on plaintiffs' land, to "erect all structures and appliances necessary or convenient in searching for, producing, * * * and removing any oil, gas or other minerals found therein." These rights being expressly granted, the defendant would incur no liability in using them, among them the vacuum pump, unless it used them in a negligent manner or for the purpose of perpetrating a fraud on the plaintiffs. As we read this record, and the plaintiffs' brief as well, no contention is made that the vacuum pump was negligently used to the hurt of the plaintiffs. Neither do they contend that the use of it actually made by the defendant was "inherently fraudulent," or fraudulent as a matter of law. The instrumentality is not complained of, but, as indicated, the way of its use is challenged as fraudulent in the instant case.

Under the terms of the lease it must be conceded that the defendant had the right to use any and all reasonable means of producing oil, gas, and other minerals called for in the lease. There is no proof that the vacuum pump is not such means. Certainly it had the right to use improved methods in producing them, provided they were reasonably and not fraudulently used. Further, it conclusively appears that the use of the pump greatly enhanced the production of oil from plaintiffs' wells, as well as casing-head gas. There is no evidence of probative force that any other method could have been employed in the production of the oil with advantages and profits equal or greater to lessors and lessee. Under the terms of the lease, the lessee had the undoubted right to stimulate the production of both oil and gas, and the only duty resting upon it was to pay the consideration promised therefor in the lease, the terms of which our Supreme Court has declared to be plain and free from ambiguity. In this state of the testimony, the use of the vacuum pump under the circumstances cannot be condemned as fraudulent as a matter of fact, and on this phase of the case the instructed verdict was correct; and it is correct for another and more apparent reason: There is no evidence of the amount of crude oil (to which plaintiffs would have been entitled to one-eighth) by which the use of the vacuum pump depleted the crude oil left in the oil formation, and which would have been recovered (in the absence of the use of the vacuum pump), by some other process. Nor is there any evidence of the value of such amount of oil in the alleged condition of lowered gravity superinduced by the use of a pump.

■ Plaintiffs have alleged and proved the amount and value of gasoline produced from the casing-head gas. Although this belonged to the defendant, its value as a manufactured or refined product would be no proof of the value of the crude oil alleged to have been converted or depleted in amount and in gravity, and to which the plaintiffs would have been entitled to the one-eighth, or the value thereof. The amount of such gasoline might be a circumstance bearing upon the amount of crude oil removed as a part of the casing-head gas by use of the vacuum pump, but it would not, standing alone, which it does, prove such amount. Proof of the amount of gasoline so extracted and its value did not furnish sufficient evidence of recoverable damages, and on that phase of the case the instructed verdict was authorized.

■ There are several assignments in the brief based upon alleged errors of the trial court in the exclusion of testimony as complained of in bills of exceptions 2 to 11, both

582

inclusive. The bills failed to disclose what the answers of the respective witnesses would have been, and for that reason we are unable to determine the materiality of the proffered testimony. For that reason no error is shown, and the assignments are overruled. 3 Tex. Jur., p. 470, § 331, and authorities cited.

■ Another assignment is based on the court's exclusion of certain testimony by the witness Clark. He first testified that he knew of a process known as the "repressure method," and, on being asked to explain the same, the court refused to permit him to do so. In the absence of a jury, and for the purposes of the bill, he explained same as a method of re-establishing in the oil-producing horizon the gas pressure that had been exhausted by the depletion of the gas in the same. That it was a method of bringing back the condition which existed in the producing sand as it was in the original state. That gas is forced into what is termed a "key well," which is not producing oil, and thence into the formation to restore original conditions in the same. He then stated that he had had "access to records of property" that was operated under vacuum, but which was later changed to the repressure method, and that the gasoline content while operating under vacuum was 6 gallons per thousand cubic feet of gas, and that when the repressure method commenced to show results, the gas coming from the wells had only a content of 2 gallons per thousand, and that the production of crude from "the properties was materially increased" by the use of the repressure method. That the recovery under that method greatly "exceeded the production by use of vacuum." That such observations were made by the witness about 1927.

Although the correctness of an instructed verdict is before us, there appears to be no error in said action of the trial court. In reaching this conclusion, the excluded statement of the witness will be taken as having been admitted and true for the purpose of disposing of this question. It will therefore be considered independently and in connection with the other testimony in this record. If it had any value whatever, it was upon the issue of fraud, and, considered in that connection, the instructed verdict was nevertheless correct, for the plaintiffs' case, as hereinbefore shown, falls short of being a case of fraud based upon the alleged use of the vacuum pump. Neither does the testimony establish any element of damage which is essential to a fraud case, and in any event the action of the court in excluding the testimony would be immaterial if we are correct in holding that the defendant's plea of res adjudicata should be sustained. The exclusion of such testimony, if error at all, is harmless.

The controlling questions raised by the assignments have been considered and disposed of, as above indicated. The others become immaterial, in view of the conclusions reached.

For the reasons assigned, the judgment of the trial court will be affirmed.