**HUMBLE PIPE LINE CO. v. DAY et al.**

No. 2503.

Court of Civil Appeals of Texas. Waco.

April 22, 1943.

Rehearing Denied May 20, 1943.

Williford & Williford, of Fairfield, and Knox W. Gilmore, of Houston, for appellant.

Geppert, Geppert & Victery, of Teague, for appellees.

HALE, Justice.

Mrs. H. F. Day sued appellant, Humble Pipe Line Company, to recover damages on account of injury to 500 acres of land and 16 head of cattle. She alleged that appellant permitted large quantities of poisonous crude oil to escape from a break in its pipe line and to settle in and near a creek running through her farm and ranch, thereby causing the injuries and damages complained of. The Equitable Company of Texas held a lien on the land and by reason thereof it intervened in the suit. The case was tried before the court below without a jury and resulted in judgment in favor of Mrs. Day and intervener jointly for the sum of $400 and in favor of Mrs. Day for $185.

The first point in appellant's brief is as follows: "Where all the testimony offered failed to separate the amount of damages for permanent injury to the land from the amount of damages for temporary injury to the land, and further showed that the greater part of such damages was temporary in nature, and the only testimony offered to sustain the judgment for damages was the difference in the market value of the entire 500 acres of land before and the market value of said land after the oil leak and burning of the oil therefrom and the alleged pollution of stock water, the trial court erred in entering judgment for any amount as damages to the land."

It is well settled that the measure of damages arising out of permanent injury to land is the difference between the reasonable market value of the land immediately before and immediately after the injury. Coleman v. Wright, Tex.Civ.App., 155 S.W.2d 382 and cases cited; Lone Star Gas Co. v. Hutton, Tex.Com.App., 58 S.W. 2d 19; Gulf, C. & S. F. Ry. Co. v. Hendricks, Tex.Civ.App., 25 S.W. 433; Missouri, K. & T. Ry. Co. v. Goode, 7 Tex. Civ.App. 245, 26 S.W. 441. Damages arising from temporary injury to land is measured by different standards, depending upon the varying circumstances of each particular case. It has been held, for instance, that the reduced rental value of the property after such injury is a proper measure. City of Tyler v. House, Tex.Civ.App., 64 S.W.2d 1007. The cost of restoring such property into its prior condition and the value of its use while in its injured state, has also been held to be a proper measure of recovery. Gulf Pipe Line Co. v. Hurst, Tex.Civ.App., 230 S.W. 1024. "The measure of damages [for burning grass] is the value of the grass as it then stood, with interest, and not the difference in the value of the land before and after the fire." Galveston, H. & S. A. Ry. Co. v. Horne, 69 Tex. 643, 9 S.W. 440. "It is only when injury to real property is permanent, that the damages therefor are measured by the depreciation in the market value of the property." Heilbron v. St. L. S. W. Ry. Co., 52 Tex.Civ.App. 575, 113 S.W. 979, 980, error refused.

Mrs. Day alleged that the escaping oil from appellant's line permanently destroyed the productivity of a portion of her land about 40 feet wide and 5,000 feet long, permanently destroyed the roots of grasses and stock water springs; that appellant's agents thereafter ignited such oil, thereby destroying from 500 to 750 trees which averaged about 8 inches in diameter; and "that by reason of the facts above set forth said ranch and farm has been permanently damaged in the sum of $1250.00." There was evidence tending to show both temporary and permanent injury to the land, but there was neither pleading nor proof as to the amount of the damages, if any, resulting from any temporary injury to the land. There was evidence that the difference between the reasonable market value of the 500 acres immediately before and immediately after the break ranged from $750 to $1,500.

Although the trial court did not file findings of fact and conclusions of law, no request having been made therefor, we think it is apparent that the $400 awarded to Mrs. Day and intervener was to compensate them for damages on account of injury to the land, while the $185 awarded to Mrs. Day was to compensate her on account of injury to her cattle. In the absence of express findings by the trial court, however, we cannot presume that any of the damages awarded was on account of temporary injury to the land because (1) there was neither pleading nor proof to sustain such implied finding and (2) there was sufficient pleading and evidence to sustain the implied finding of damages in the sum of $400 arising from permanent injury to the land. Morton Salt Co. v. Lybrand, Tex.

Civ.App., 292 S.W. 264. Therefore, appellant's contentions under its first point are overruled.

■ Appellant also asserts that since Mrs. Day alleged permanent injury to a space of ground about 40 feet wide by 5,-000 feet long, it was error for the court to permit her to introduce evidence of the decreased market value of the entire 500 acre ranch and to award damages therefor, because such damages, if any, were special or consequential and were not specifically pleaded. It is generally held that "special or consequential damages, not being presumed to be foreseen or anticipated by the defendant, must be specially alleged in order that a basis may be laid for proof and a recovery." 13 Tex.Jur. p. 319, § 175 and cases cited. However, we do not think this rule of law is of controlling effect in its application to the record before us. In the first place, if the sum of $400 was in fact the difference between the reasonable market value of the ranch immediately before and immediately after the permanent injury complained of, then the award to appellees in that amount was not for special damages within the purview and meaning of the law, but was for general damages which the law necessarily implies from the wrongful acts complained of. 13 Tex.Jur., p. 319, § 174 and cases cited. Moreover, Mrs. Day alleged facts generally which, if true, would warrant the trial court in concluding therefrom that appellant, in the exercise of due care, could and should have reasonably anticipated and foreseen that permanent injury to a strip of ground abutting a creek running through her ranch would naturally and necessarily depreciate the reasonable market value of the entire property. Consequently, we do not think the trial court erred in permitting evidence of depreciation in the market value of the entire tract, or in awarding damages in accordance therewith.

■ Appellant's final contention is: "Where the testimony failed to show that the cattle drank oil or water polluted with oil, and the only testimony offered to show damages to the cattle was the difference in market value before and after the leak by reason of loss of weight of the cattle and presumed knowledge of the exposure of the cattle to polluted water, same was too vague, remote and speculative and the trial court erred in entering judgment for the depreciation in market value of the cattle, without definite proof that the cattle drank the oil, and without further definite proof that that was the cause of loss of weight of the cattle, or depreciation in market value."

There was evidence that Mrs. Day owned 16 head of cattle which were in good condition in her pasture when the break occurred in appellant's line; that escaping oil from the break ran down a dry branch and into the creek flowing through her pasture; that the oil penetrated into the soil to a depth of from one to ten inches for a considerable distance on each side of the branch and creek; that after the break had been repaired and the bulk of the escaping oil had been burned, there was still live oil in the pasture and a scum or oil slick over pools of water in the creek; that live oil is poisonous and detrimental to the health of cattle and when taken internally is reasonably calculated to cause death, or illness and the loss of weight; that the cattle in Mrs. Day's pasture were seen to have oil on their feet and mouths after the break; that one cow and calf died and the others lost weight and appeared to be listless and drawn and depreciated in market value. A veterinarian of twenty years' experience testified that he examined the cow that died and determined from the presence of oil in her stomach that the cause of her death was oil poisoning. Thereupon the counsel for appellant admitted in open court that the death of the cow and calf was due to the drinking of oil. Without further statement, we hold that the facts and circumstances in evidence were sufficient to support the implied legal inference of the trial court that Mrs. Day's cattle drank oil which caused the death of one cow and calf and the loss of weight and depreciated market value of the other cattle, to her damage in the sum of $185. Texas Co. v. Earles, Tex.Civ.App., 164 S.W. 28.

Finding no reversible error, the judgment appealed from is affirmed.