GENERAL CRUDE OIL COMPANY V. EDWIN AIKEN
EDWIN AIKEN V. GENERAL CRUDE OIL COMPANY

No. A-7898. Decided February 22, 1961
Rehearing overruled April 12, 1961
(344 S. W. 2d, Series 668.)

*Morris G. Watson,* of Roby, *Turner & Seaberry, Virgil T. Seaberry* and *Virgil T. Seaberry, Jr.,* of Eastland, for petitioner General Crude Oil Company.

*Mays, Leonard, Moore & Dickson,* of Sweetwater, for Aiken.

MR. JUSTICE NORVELL delivered the opinion of the Court.

This is a water pollution case. Aiken, the owner of a 3,707 acre ranch, alleged that General Crude Oil Company had negligently disposed of salt water brought to the surface in its oil producing operations. Based on jury findings, he was awarded a judgment of $37,070 as and for damages to his ranch. The Court of Civil Appeals, although agreeing with plaintiff for the most part, reversed the judgment of the District Court because of an asserted error in the wording of two special issues. 335 S.W. 2d 229. Both parties filed applications for writ of error in this Court. We granted General Crude Oil Company's application upon the point asserting that:

The Court of Civil Appeals erred in holding that Aiken could recover from General Crude on the ground of negligence, apart from a showing that the oil producing company had committed a wilful, wanton or intentional injury.

Aiken's application was also granted. His points attack the holding of the Court of Civil Appeals upon which its reversal of the trial court's judgment was predicated.

In view of the full and complete opinion of the Court of Civil Appeals, we need not discuss at length any of the points presented other than those upon which the writ was granted. Except in the particular hereinafter mentioned, we approve the holdings of the Court of Civil Appeals. It is our opinion that the point of error upon which General Crude's application was granted is not well taken. We are however of the opinion that the Court of Civil Appeals erred in holding that the method of submitting the damage issues employed by the trial court necessitates a retrial of the cause. Accordingly, the judgment of the Court of Civil Appeals ordering such remand will be reversed and the judgment of the trial court affirmed.

As the parties occupy dual positions in this Court, we will use their trial court designations. Preliminary to our discussion of the point upon which the writ of error was granted, we will say that we agree with the Court of Civil Appeals that there was evidence of negligence. The defendant constructed its salt water disposal pit upon a location uphill from and higher in elevation

than a fresh water seep spring on plaintiff's premises and operated it in s u c h a manner as to pollute the underground waters that fed the spring.

■ Further, we find no objection to plaintiff's method of pleading and framing his damages. It was asserted that the spring was a part of the ranch premises and used in connection with the operation thereof. The proof supported this theory. Texas Pacific Coal & Oil Co. v. Taylor, Tex. Civ. App., 47 S.W. 2d 1110, no wr. hist., 25 C.J.S. 606. The opinion of the Court of Civil Appeals adequately covers the contentions to the contrary. Much of the argument contained in the application for writ of error relates to the question of excessiveness of the award of damages, a matter which lies peculiarly within the constitutional fact jurisdiction of the Court of Civil Appeals.

■ Defendant's point upon which its application for writ of error was granted is answered by this Court's decision in Brown v. Lundell, 162 Texas 84, 344 S.W. 2d 863. We are also in accord with the statement of the rule made by the Court of Civil Appeals, viz:

> "Under an oil and gas lease the surface estate 'is servient to the mineral estate for the purpose of the mineral grant, but even that right is to be reasonably exercised with due regard to the rights of the surface owners.' Gulf Production Co. v. Continental Oil Co., 139 Texas 183, 132 S.W. 2d 553, 563, 164 S.W. 2d 488; Gregg v. Caldwell-Guadalupe Pick-Up Stations, Tex. Com. App., 286 S.W. 1083, 1084; Warren Petroleum Corp. v. Martin, 153 Tex. 465, 271 S.W. 2d 410. In exercising the right to make such use of the premises as was reasonably necessary to operate the oil and gas lease, appellant owed the duty to appellee as owner of the surface estate not to negligently injure such estate. Weaver v. Reed, Tex. Civ. App., 303 S.W. 2d 808; Connellee v. Magnolia Petroleum Co., Tex. Civ. App., 54 S.W. 2d 577; Shell Oil Co. v. Dennison, Tex. Civ. App., 132 S. W. 2d 609, (Writ Ref.)."[1]

---

1. Perhaps the most complete collation of cases involving the escape of deleterious substances from oil and gas wells is contained in an article by Mr. Lee Jones, Jr., published by Matthew Bender & Co., Inc. as a part of the proceedings of the First Annual Rocky Mountain Mineral Law Institute. In stating the general rule applicable to damages to the leased premises, Mr. Jones said:

"If it develops that the damage was sustained by or upon the leased premises, certain well-established principles of law should be borne in mind. First and foremost, the vast majority of courts, with only minor variations, hold that a mineral lease creates and vests in such a lessee the dominant estate in the surface of the land for the purposes of the lease; that the lessee has the right

It is urged that this Court in Warren Petroleum Corporation v. Martin, 153 Texas 465, 271 S.W. 2d 410 effected a change in the general rule of liability which is applicable to dominant and servient estates in land. It is said that instead of the holder of the dominant estate being under a duty to refrain from negligently injuring the servient estate—with reasonable care being the test,—the rule is that the holder of the dominant estate is not liable for an injury to the servient estate caused by him unless the act or omission causing damage was wilful, intentional or wanton.

As pointed out in Brown v. Lundell, supra, the Warren-Martin case does not support the broad proposition urged by the defendant. However, we shall answer briefly some of the arguments here urged in support of defendant's position, although some repetition of what was said in Brown v. Lundell may result.

Under the doctrine of stare decisis, the binding rule of a case is determined from the facts which the Court deemed important as stated in the opinion, together with the resolving argument based thereon which resulted in the decision.

In considering Warren Petroleum Co. v. Martin, we are confronted at the outset with the circumstance that the case is not one treating primarily with the dominant-servient estate relationship. Incidental mention is made of dominant and servient estates but Martin did not seek damages for injury to his servient estate in the land. He sought damages for injuries to cattle. The case is an animal injury case of a particular type and not a land injury case.

It is disclosed by the opinion of this Court that: Martin's cattle were injured by drinking petroleum substances which had escaped from Warren's pump; these substances had run onto the ground and formed two small pools within five feet of the pump; there was no evidence that Warren had used more land

to the free use of so much of the surface of the leased premises as is reasonably necessary to conduct the operations permitted by the lease; that the lessee is not the insurer of the servient estate of the lessor; that he is under no duty to fence off his producing wells, indispensable pits and ponds, tight oil tanks and the like; but that the respective holders of the dominant and servient estates must make reasonable use of the surface of the leased premises and in so doing each must exercise his respective rights and privileges with reasonable regard for the rights and privileges of the holder of the complementary estate in the leased premises." Jones, "Escape of Deleterious Substances: Strict Liability v. Liability Based Upon Fault."

than was reasonably necessary for its operations, and there was no evidence that Warren's pumping equipment was defective or improperly used.

These facts are made the basis of two holdings: (1) the facts did not raise an inference of negligence either in using unsuitable equipment or in the manner of conducting the pumping operations, and (2) as Warren's operations took place within the legitimate operating area which it was entitled to occupy as the holder of the dominant estate, it was under no duty to keep Martin's cattle out of such area.

This Court then stated the rule of nonliability under the holding last set out relating to the invasion of the operating area by animals as follows:

> "There is no evidence that petitioner intentionally permitted the oil to escape from the pump. The only duty owed the respondent was not to intentionally, wilfully or wantonly injure his catte. The jury has found that petitioner did not not intentionally injury the cattle. It was necessary for respondent to plead and prove that petitioner used more land than was necessary."

While in a proper case the use of more land than is reasonably necessary may constitute an independent ground of liability, it is rather apparent that in Warren v. Martin, the concept of "reasonable use" was properly used to define and limit the legitimate operating area of the defendant. It was incumbent upon plaintiff to show that the deleterious substance deposited upon the ground lay outside the legitimate area of operations before he could recover for injuries to his animals. This, because there is no duty upon the operator to fence out roving animals from the legitimate operating area, and the sole duty owed to the owner of animals within such area is the duty to refrain from injuring the animals intentionally.

Warren Petroleum Co. v. Martin fits into a recognized category of cases which are referred to in the briefs as "fence" or "cow" cases. The governing rule which likens wandering cattle and other domestic animals to trespassers upon the legitimate area of operations of the oil driller or producer apparently came to Texas by way of Oklahoma. In Pure Oil Company v. Gear, 183 Okla. 489, 83 P. 2d 389, loc. cit. 395, it was said that, "Since the cattle were trespassing, the act of the defendant in allowing

puddles of salt water to collect within the ditch does not constitute actionable negligence inasmuch as there is no evidence tending to show that such act was intentional, wilful or wanton." Pure Oil Co. v. Gear was quoted from and followed in Sinclair Prairie Oil Co. v. Perry, Tex. Civ. App. 191 S.W. 2d 484, no wr. hist. See also, Baker v. Davis, Tex. Civ. App., 211 S.W. 2d 246, no wr. hist.; Trinity Production Co. v. Bennett, Tex. Civ. App., 258 S.W. 2d 160, 161, no wr. hist.

These cases do not purport to state a rule governing dominant and servient estates when damage to land is involved. In such cases the rule is well recognized that the holder of the dominant estate must exercise his rights with due respect for the rights of the owner of the servient estate and without negligence. Brown v. Lundell, 162 Tex. 84, 344 S.W. 2d 863; Miller v. Crown Central Petroleum Corp., Tex. Civ. App., 309 S.W. 2d 876, no wr. hist. An accurate analysis of Warren v. Martin is contained in Weaver v. Red, Tex. Civ. App., 303 S.W. 2d 808, no wr. hist., wherein it was said:

"That opinion, as all others approved by it, recognizes that the oil and gas lessee, even when he holds the dominant estate, must exercise his rights with due regard for the rights of the surface owner. The plaintiff in the Warren case depended upon an allegation that the lessee was negligent in using a defective pump and thus permitting oil to escape and form in pools near the well where his cattle drank it. The Supreme Court held there was no evidence that the pump was defective; that to recover plaintiff had to show that defendant breached some duty he owed plaintiff and, since he did not prove said alleged negligence, he was required to prove that the lessee either used a greater area than was reasonably necessary or that he intentionally willfully or wantonly injured plaintiff's cattle."

■ Turning now to the points upon which plaintiff's application for writ of error was granted, it may be said at the outset that the damage issues could have been more clearly worded. However, in the light of the evidence, we do not believe there is a reasonable probability that the jury took into consideration and hence reflected in their answers the circumstance that the mineral estate suffered depletion from the time oil was discovered in 1955 to the time of trial in 1959.

By its answers to Special Issues Nos. 1 and 2, the jury

found that salt water from defendant's pit penetrated the fresh water underground strata and polluted Aiken's fresh water spring. The next Special Issue and the jury's answer thereto was as follows:

"Special Issue No. 3.

"Do you find from a preponderance of the evidence that plaintiff Edwin Aiken's tract of land, *as a whole*, was damaged by the pollution of his spring with salt water, if you have found the same was so polluted. Answer: Yes."

The "before and after" issues relating to damages and the jury's answers thereto were as follows:

"Special Issue No. 18.

"From a preponderance of the evidence, what do you find was the reasonable cash market value of Plaintiff Edwin Aiken's land, *as a whole*, immediately before the salt water pollution of the spring on said land, if you have found the same was so polluted? Answer in a lump sum in dollars and cents. Answer: $240,955.00.

"Special Issue No. 19.

"From a preponderance of the evidence, what do you find was the reasonable cash market value of Plaintiff Edwin Aiken's land, *as a whole*, after the salt water pollution of the fresh water spring on said land, if you have found that it was so polluted? Answer in a lump sum in dollars and cents. Answer: $203,885.00."

We have italicized the words "as a whole" in the above issues. This phrase is not entirely free from ambiguity. It is reasonably clear that the trial judge used the phrase to inquire whether the entire area of the ranch, considered as a unit, was damaged, as opposed to the theory suggested by defendant that only a portion of the ranch suffered injury.[2]

---

2. In the brief filed in the Court of Civil Appeals attacking the form of Special Issues Nos. 18 and 19, the defendant said:

"The damage to the surface of appellee's land has thus far been completely confined to his spring and the creek block below the spring. In the future, and at the most, it cannot affect more than 2 other tanks, 2 other creek blocks, and 100 acres of land. No damage is shown to the rest of his ample water supply, his house, well, fence or balance of his 3707-acre ranch. The issues in question should have been confined to that part of the ranch which was or could be damaged, if indeed appellee sustained permanent damage."

The contention that the evidence does not support a finding that plaintiff's ranch "as a whole" was damaged is fully answered by the Court of Civil Appeals and, as above indicated, we approve that Court's holding upon the point.

On the other hand, the phrase "as a whole" when applied to real property is susceptible to a construction which would indicate an inclusion of the mineral estate. Here, the plaintiff owned a small fraction of the mineral estate and sought no damages with reference thereto.

This being the situation, it is necessary for us to examine the evidence to determine the issue of reversible error, Rule 503, Texas Rules of Civil Procedure; the inquiry being: Can we say that there is a reasonable probability that the jury considered a decline in oil production and consequent depletion of the oil reserves under the ranch in arriving at its answer to Special Issue No. 19? We do not believe that we can. The case was obviously and purposely tried upon the theory that the ranching operations upon plaintiff's land had been injured because of the destruction of a fresh water supply upon the premises. The only evidence of depletion of oil reserves was that given by C. W. Griggs, the field superintendent for the defendant. As to the Aiken wells, he testified that No. 4 made 152 barrels on the first test (in 1955), then declined to about 52 barrels, "on a pretty fast decline," and at the time of the trial the well was making about 4 barrels; No. 5 first made about 180 barrels on a fluid test and was making 16 to 20 barrels at time of trial; No. 6 initially made about the same as No. 5 and was making 20 to 26 barrels at the time of trial. It also appeared that another well (No. 8) had produced from November 1955 until May 1957 and was plugged in July of 1957.[3]

Perhaps the most important factor in resolving this issue against defendant's contention is that the evidence rather definitely fixed the time of the "salt water pollution of the spring" at May and June of 1958. Aiken testified that he found the spring salty in the last part of May or the first part of June.

3. There is some dispute concerning statements of royalties paid to Aiken which are mentioned by the Court of Civil Appeals. These items were not questioned by plaintiff as appellee in the court below, but are challenged here. An inspection of the statement of facts discloses that such statements of royalty payments were excluded by the trial judge and appear in an informal bill of exceptions contained in the statements of facts. As we view it, this excluded testimony would add but little to that given by Griggs. It shows a decline in oil production from 1955 to 1959. However, on the point before us, it cannot be considered as it was not heard by the jury.

Griggs testified that Aiken notified him of this fact on or about the first of June and that he went down to the spring and found it salty.

There was no testimony upon which a substantial difference in value of the mineral estate before or after the crucial event of May-June, 1958, could be based. No witness attempted to make a distinction as to the value of the oil reserves before and after May-June, 1958. We do not think the jury was misled by the form of submission employed by the trial court. In the light of the evidence the controlling issues seem clear enough. The jury was called upon to determine in dollars and cents the loss suffered by the owner of the ranch because of the destruction of a valuable spring upon the premises. There was no occasion for reasonable jurors to become confused by the "before and after" damage issues and we are unwilling to assume that they were. Galveston, Harrisburg & San Antonio Railway Company v. Washington, 94 Texas 510, 63 S.W. 534; Northern Texas Traction Co. v. Weed, Tex. Com. App., holdings approved by the Supreme Court, 300 S.W. 41; Texas Employers Insurance Association v. McKay, 146 Texas 569, 210 S.W. 2d 147.

For the reason pointed out, the judgment of the Court of Civil Appeals is reversed and the judgment of the trial court is affirmed.

ASSOCIATE JUSTICE SMITH dissenting.

ASSOCIATE JUSTICE STEAKLEY not sitting.