**AMERADA–HESS CORP. and Henry McBride, Appellants,**

v.

**Gene IPARREA, Appellee.**

No. 6274.

Court of Civil Appeals of Texas, El Paso.

May 2, 1973.

Rehearing Denied May 23, 1973.

Crenshaw, Dupree & Milam, Cecil Kuhne, Brad Crawford, Jr., Lubbock, for appellants.

Paul New, Denver City, for appellee.

## OPINION

PRESLAR, Justice.

Appellee brought this suit against Appellants for damages sustained when Appellee's sheep consumed oil which had escaped from Appellants' well. The jury, in response to special issues, found Appellants guilty of negligence, found damages in the sum of $50,368.74, and judgment was entered for that amount. We are of the opinion that the judgment should be reversed and rendered.

Appellants were producing oil on the premises involved under an oil and gas lease, and Appellee was using the premises under a grazing lease of the surface. Appellants' oil and gas lease and operations thereunder were prior in time to Appellee's grazing lease. The sheep, some 2,900 in number, had been placed in this pasture only three days prior to the incident, but Appellee had pastured sheep there the previous year. Basis of the damage claim was that 833 of them died and others were sick and lost weight. The oil escaped

overnight from a small needle valve located on the casing of Appellants' oil well. All was in order when the last person left the premises at 6:00 or 7:00 P.M., but the needle valve was found open the next morning with oil running out on the ground. The purpose of the needle valve was to gauge the pressure on the casing by screwing a gauge into it. Thus it was a part of and attached to the well proper. The oil did not escape because the valve was defective and leaking, but rather it was found to be open, and it did not leak when then closed. Appellants argue that the proof is absolute that some unknown person opened the valve, but no issue was submitted to establish that fact. As the record stands, it is simply unknown how the valve became opened. An issue was submitted by which the jury found that Appellants did not open the valve.

█ The sole act of negligence found by the jury is that the failure of Appellants to insert a plug in the needle valve was negligence. That was found to be a proximate cause of damages, and the judgment holding Appellants liable for Appellee's loss is based on those findings. We are of the opinion that the failure to have the valve plugged, if negligence, was not actionable under the facts and circumstances present for it did not amount to a failure to perform a duty required by law. Under Appellants' first point of error, we hold that Appellee, as plaintiff, had not shown that the defendants-Appellants breached some legal duty owed him.

This is not a case resting primarily on the dominant-servient estate relationship, but a look at the respective rights of the parties in and to the premises is in order. Appellants' lease of the minerals covered the entire premises and gave them the right to use so much of the premises as reasonably necessary to effect the purposes of that grant. That could be all of the surface or a small portion of it, but whatever it amounted to, this legitimate operating area was Appellants' domain. What remained outside of such area is what Ap-

pellee obtained the use of under his subsequent grazing lease and this was his domain. Or perhaps the situation of the parties is better understood if we recognize that the landowner has previously leased to the oil operator so much of the surface as is reasonably necessary, and any attempted use of such area by him would be in violation of that lease. He can not have his lease and use it too. Because of the very nature of the activities of exploration for and production of the minerals, it is not possible to map out their precise area, on the surface or otherwise, but once the area of use "reasonably necessary" is determined, the parties stand in the position of adjoining landowners. The mineral lessee having the grant of all of the premises, the burden is on one claiming excessive use to establish it. Humble Oil & Refining Company v. Williams, 420 S.W.2d 133 (Tex. Sup.1967).

At the outset, it becomes important to note the nature of this case and to distinguish it from injury-to-land cases. This is an injury-to-livestock case. In the land injury cases there is an invasion of the surface owners' domain, usually by an excessive use of the surface or by allowing substances to escape on to it. Here, we have something of the reverse, the invasion is by the surface lessee's livestock onto the domain of the mineral lessee. Obviously, there is a distinction to be made in the rights and liabilities of the parties depending on who is invading or trespassing on whom when injury occurs. We have tried to simplify their position in relation to each other because of the very different principles of law applicable, and because in our review of the many decisions we have found no little confusion resulting from the application of principles of law of one situation to the other. The distinction between the two types of cases is discussed by the Supreme Court in General Crude Oil Company v. Aiken, 162 Tex. 104, 344 S.W.2d 668 (1961), and Brown v. Lundell, 162 Tex. 84, 344 S.W.2d 863 (1961). Both of those cases were land injury cases in which the Supreme Court ruled out the ap-

plication there of the principles of law enunciated by it in the livestock-injury case of Warren Petroleum Corp. v. Martin, 153 Tex. 465, 271 S.W.2d 410 (1954), and other such livestock-injury cases. The Supreme Court stated in General Crude Oil Company v. Aiken, supra:

"While in a proper case the use of more land than is reasonably necessary may constitute an independent ground of liability, it is rather apparent that in Warren Petroleum Corp. v. Martin, *the concept of 'reasonable use' was properly used to define and limit the legitimate operating area of the defendant. It was incumbent upon plaintiff to show that the deleterious substance deposited upon the ground lay outside the legitimate area of operations before he could recover for injuries to his animals.* This, because there is no duty upon the operator to fence out roving animals from the legitimate operating area, and the sole duty owed to the owner of animals within such area is the duty to refrain from injuring the animals intentionally.

Warren Petroleum Corp. v. Martin fits into a recognized category of cases which are referred to in the briefs as 'fence' or 'cow' cases. The governing rule which likens wandering cattle and other domestic animals to trespassers upon the legitimate area of operations of the oil driller or producer apparently came to Texas by way of Oklahoma. In Pure Oil Company v. Gear, 183 Okl. 489, 83 P.2d 389, loc. cit. 395, it was said that, 'Since the cattle were trespassing, the act of the defendant in allowing puddles of salt water to collect within the ditch does not constitute actionable negligence inasmuch as there is no evidence tending to show that such act was intentional, wilful or wanton.' Pure Oil Company v. Gear was quoted from and followed in Sinclair Prairie Oil Co. v. Perry, Tex.Civ.App., 191 S.W.2d 484, no wr. hist. See also, Baker v. Davis, Tex. Civ.App., 211 S.W.2d 246, no wr. hist.; Trinity Production Co. v. Bennett, Tex.

Civ.App., 258 S.W.2d 160, 161, no wr. hist.

These cases do not purport to state a rule governing dominant and servient estates when damage to land is involved." (emphasis supplied)

The case before us then is controlled by the principles of law applicable to situations where plaintiff's livestock invade the premises of the defendant and are there injured. Such a case was Warren Petroleum Corp. v. Martin, supra. There, Martin sought damages from Warren for the death of his cattle caused by their drinking crude oil standing in puddles about five feet from Warren's oil well. The well machinery was not enclosed with a fence. It was alleged that the pumping equipment on such well was in such defective condition that crude oil was thrown out, and through the negligence of Warren and its employees it was permitted to gather in pools on the ground where the cattle had access to it. The jury found that Warren permitted oil to escape from the well; that such was negligence; that the cattle drank such oil, and some died and others were injured; that Warren did not intentionally injure the cattle; and it fixed the amount of damages. The Court of Civil Appeals affirmed a judgment for Martin (265 S. W.2d 199). The Supreme Court reversed and rendered the judgment for damages resulting from the cattle drinking oil, but affirmed damages for injury to growing crops and to fences.

In rendering judgment that the plaintiff take nothing for livestock injuries, the Supreme Court wrote the law applicable to the limited situation we have here. It was determined that there was no proof of negligence, and that the only duty owed the surface lessee was not to intentionally, willfully or wantonly injure his cattle. The Court said:

"In order to establish negligence in this case it was necessary to show that the act of petitioner in permitting the oil to escape from the pump, as alleged by

respondent, involved the breach of some legal duty which it owed to respondent. Carter v. Simmons, Tex.Civ.App., 178 S.W.2d 743. 'Negligence or a failure to perform a duty required by law is never presumed as a fact, but must be proved by evidence; and the burden of proving it is on the party seeking a recovery of damages by reason of such negligence or failure of duty.' 30 Tex.Jur., Sec. 127, p. 800." (Now found in 40 Tex.Jur.2d 657, Negligence, Sec. 139).

■ In ruling out the breach of any legal duty, the Court considered a number of things which are present in the case before us. There was no evidence that the pumping equipment was defective. That is true as to the valve in our case. The mere fact that oil was permitted to escape and form in pools near the well, without a showing of the manner of operations, could not form the basis for a legal inference of negligence; there was no duty to fence, and absent such a duty and a violation thereof, there was no liability for cattle drinking oil on the ground near the well; there was no proof of excess use, such was plaintiff's burden, and there could be no presumed finding thereof; the fact that oil was on the ground, coupled with evidence that the well was not operated in the usual and customary way, did not prove negligence. In our case, the jury found that Appellants did not cause the valve to be open. In Warren, the Court said:

"There is no evidence that petitioner intentionally permitted the oil to escape from the pump. The only duty owed the respondent was not to intentionally, wilfully or wantonly injure his cattle."

The reasons given in Warren for non-liability being present in the case before us, we are constrained to hold that there is no liability here. Here, as there, the act of negligence found by the jury is not a violation of any duty owing by Appellants to Appellee. Moreover, as pointed out, there is no evidence of defective equipment used by Appellants. The basis of Appellee's negligence allegation is that it was Appellants' custom and company policy to insure that plugs were kept in valves of this type. The fact that it was the custom of Appellants to have a plug in such a valve is an insufficient premise in itself to prove negligence. The record reflects no evidence that use of the plug was customary in the industry outside the realm of Appellants' operations. In 40 Tex.Jur.2d 684, Sec. 152, is found the following:

"Evidence of custom or usage is sometimes admissible on the issue of negligence for the purpose of showing that the actor's conduct, not having been in conformity with the established usage, rendered him responsible or, having conformed thereto, did not engage his responsibility."

The only custom that was considered in this case was that of Appellants, and keeping a plug in the valve could have been a higher or lower standard in the industry. The Supreme Court in Jones v. Nafco Oil and Gas, Inc., 380 S.W.2d 570, Tex., regarding Martin (supra), stated:

"In the Martin case, there was testimony from a witness that a well pumping oil, throwing oil out twelve or fifteen inches up in the air above the coupling, with the wind blowing that oil out over the ground and forming puddles of oil (as the testimony in that case showed were the facts) was not the 'usual and customary method of producing, and, the precautionary way of producing oil in the Olney territory.' In discussing this evidence as showing negligence on the part of the operator, this Court said: 'This evidence of failure to follow custom, which at the most only shows that the result accomplished was not the usual and customary result, does not aid in proving negligence in the absence of proof that the equipment on the lease was not the equipment customarily used or that the lease was not being pumped or handled in a way that was not customary.'"

As to the situation where livestock wander onto or invade the premises of the oil operator and are there injured, there can be no doubt but that Warren is still the law. The Supreme Court followed it in Jones v. Nafco Oil and Gas, Inc., supra (a livestock-injury case), and explained its application in two land-injury cases, Brown v. Lundell, supra, and General Crude Oil Company v. Aiken, supra. It would unduly burden this opinion to cite the many cases in line with Warren, but the most recent is one by this Court, Tex.Civ. App., Young v. McGill, 473 S.W.2d 672 (1971, n. w. h.).

Appellee cites Currey v. Ingram, 397 S. W.2d 484 (Tex.Civ.App.1965, ref'd n. r. e.), as an instance where recovery was allowed for injury to sheep because of the negligence of the oil operator. In that case, the several acts of negligence of the oil operator resulted in salt water pollution of the plaintiff's water *on his land*. Damages were allowed for injury to both the land and the sheep, which drank from the polluted water supply outside the legitimate operating area of the defendant. This was not a case where the sheep invaded the oil operator's premises. The same is true of Humble Pipe Line Co. v. Day, 172 S.W.2d 356 (Tex.Civ.App.1943, ref. want merit) where escaping oil ran onto the land of the plaintiff and polluted her creek and damages were awarded for injury to both land and cattle. In Weaver v. Reed, 303 S.W. 2d 808 (Tex.Civ.App.1957, n. w. h.), the surface owner sought to recover from the oil operator for the death of cattle allegedly caused by their consuming pipe lubricant from an open bucket left near the well site and from pipe stacked at the well. The Court held that the oil operator was not liable if the cattle died as a result of licking the lubricant from the pipe if that was an indispensable incident to the drilling of the well, but it would be liable if the cattle died as a result of eating the lubricant from the bucket which was left open. A judgment for the plaintiff was reversed because the proof did not establish that the cattle died from eating the lubricant from the bucket. We see no conflict with that case and our holding here. The Court was apparently using the concept of "reasonable use" to define and limit the area of the defendant's operations. It ruled out liability for the cattle licking lubricant from the pipe, saying:

> "There is no showing that having lubricated pipe stacked at the well was not reasonably necessary to effectuate the purposes of the lease. See Placid Oil Co. v. Lee, Tex.Civ.App., 243 S.W.2d 860; Meyer v. Cox, Tex.Civ. App., 252 S.W.2d 207, 209 (Writ Ref.)."

And its statement as to liability was:

> "But, it does not follow that the lessee is not liable to the lessor for damages proximately caused by negligently leaving open a can containing a poisonous substance where it could be eaten by the lessor's cattle."

That statement, and the discussion which preceded it, indicate that the Court was basing liability on excess use of the premises—exceeding what was reasonably necessary. We do not have that contention in the case before us, and no issue was submitted on excessive use as a ground for recovery.

In view of our holding, we do not reach the remaining points of error of the Appellants, nor the cross-point of the Appellee.

The judgment is reversed and rendered.