**CHAMBERS–LIBERTY COUNTIES NAVIGATION DISTRICT, Petitioner,**

v.

**David A. BANTA et al., Respondents.**

**No. B–1773.**

Supreme Court of Texas.

March 4, 1970.

Rehearing Denied April 8, 1970.

Daniel & Morrison, Price Daniel, Jr., Liberty, for petitioner.

C. A. Miles, Jr., Liberty, for respondents.

HAMILTON, Justice.

Condemnor-petitioner, Chambers-Liberty Counties Navigation District, brought this suit to condemn the surface estate in 7.-6345 acres of land owned by condemnees-respondents, David A. Banta, et al. Condemnees also own the mineral estate subject to an outstanding mineral lease; the lessee is not a party in this lawsuit. In the condemnation petition the mineral estate together with the right of ingress and egress upon the surface estate was expressly reserved unto condemnees. In accordance with the jury verdict, the trial court awarded condemnees $1,908.63 for the value of the surface estate taken and no damages for the remaining severed mineral estate. The Court of Civil Appeals held that the jury's finding of no damages to the severed mineral estate was contrary to the great weight and preponderance of the evidence; therefore, the judgment of the trial court was reversed and the cause was remanded for a new trial. 445 S.W.2d 61. We reverse the judgment of the Court of Civil Appeals and affirm the judgment of the trial court because as a matter of law under the facts involved there can be no damages to the mineral estate, such mineral estate being the dominant estate.

The property being condemned was described in condemnor's Second Amended Original Petition. The description concluded as follows:

"SAVE AND EXCEPT, and reserved unto Defendants, their heirs, successors and assigns, all right, title and interest in and to all of the oil, gas, and other min-

erals in and under and that may be produced from said land, together with right of ingress and egress in, over and upon said land for the purpose of or incidental to the exploration, development, production, and transportation of such oil, gas, and other minerals."

The description of the property was followed by the purposes for which the property was being condemned:

"* * * [I]t is necessary for Plaintiff to acquire, take, hold, occupy, own, and use the above described real estate, *subject to the exceptions,* conditions and agreements above stated, for the purposes of developing and improving the adjacent navigable waters of the Trinity River, spoil disposal areas, the establishment and development of a port, docks, warehouse, railroad extensions, and other purposes incident to or necessary for the development of industries on said lands, as authorized by Article 8263h and other laws of the State of Texas relating to Navigation Districts." [Emphasis added.]

The judgment of the trial court expressly included the previously quoted exception and reservation unto defendants-condemnees of the mineral estate together with the right of ingress and egress upon the surface estate.

In holding that the jury's finding of no damages to the severed mineral estate was against the great weight and preponderance of the evidence, the Court of Civil Appeals cites only the testimony of Tom Poynor, an expert witness, as being favorable to condemnees. This testimony was that if the surface is covered with structures so that a drilling rig cannot get onto the lease, then the underlying minerals would have no value or if the surface is used by condemnor in such a way as to necessitate the drilling of a directional well, then the value of the minerals would be lowered because of the additional costs involved in directional drilling. The Court of Civil Appeals could have reached its

"great weight and preponderance" holding only if it gave condemnor's surface estate legal priority and dominance over condemnees' mineral estate or if it ignored condemnees' common law right to use the surface estate.

■ In situations where the surface and mineral estates have been severed, the mineral estate owner has a common law right to use the surface estate, as expressed in Cowan v. Hardeman, 26 Tex. 217 (1862):

"It is a well established doctrine from the earliest days of the common law, that the right to the minerals thus reserved, carries with it the right to enter, dig and carry them away, and all other such incidents thereto as are necessary to be used for getting and enjoying them.

\* \* \* \* \* \*

"The State must have the easement of going upon the land for this purpose; and if to the full enjoyment of the right of the State it should become necessary to use the whole of the land, timber and water upon the tract, the right of the State to an easement to that extent cannot, I apprehend, be questioned."

This common law right was created "* * * because a grant or reservation of minerals would be wholly worthless if the grantee or reserver could not enter upon the land in order to explore for and extract the minerals granted or reserved." Harris v. Currie, 142 Tex. 93, 176 S.W.2d 302 (1944). See also Warren Petroleum Corp. v. Monzingo, 157 Tex. 479, 304 S. W.2d 362, 65 A.L.R.2d 1352 (1957); Lemar v. Garner, 121 Tex. 502, 50 S.W.2d 769 (1932); and Empire Gas & Fuel Co. v. State, 121 Tex. 138, 47 S.W.2d 265 (1932).

The trial court's judgment citing the previously quoted reservation of the mineral estate unto condemnees does not preclude the common law right of condemnees to the reasonable use of condemnor's surface estate. Therefore, condemnees have not been denied their common law right.

The reservation in the trial court's judgment expressly reserves unto condemnees the "* * * right of ingress and egress * * * for the purpose of or incidental to the exploration, development, production, and transportation of such oil, gas, and other minerals." We construe this right of ingress and egress as being a mere statement of condemnees' common law right to the reasonable use of the surface estate. The right of ingress and egress for the expressed purposes adds nothing to the common law right, nor do we construe such right of ingress and egress as being a limitation upon the common law right.

■■ In cases not involving condemnation proceedings this Court has held that a mineral estate together with the common law right to use the surface estate is the dominant estate. General Crude Oil Co. v. Aiken, 162 Tex. 104, 344 S.W.2d 668 (1961), and Warren Petroleum Corp. v. Martin, 153 Tex. 465, 271 S.W.2d 410 (1954). We hold that in condemnation proceedings wherein the surface and mineral estates are severed and the mineral estate is reserved unto condemnees together with the common law right to use the surface estate, such mineral estate is the dominant estate and condemnees' common law right to use the surface estate has superiority and priority over any purposes for which condemnor desires to use the surface. See White v. Natural Gas Pipeline Co. of America, 444 S.W.2d 298 (Tex. 1969). So long as condemnees possess their common law right to the reasonable use of the surface estate, as a matter of law there is no damage to the dominant mineral estate. If at a later time condemnor desires to interfere with condemnees' exercise of such common law right then it may do so by future condemnation proceedings for such second taking. See Brazos River Conservation & Reclamation Dist. v. Allen, 141 Tex. 208, 171 S.W.2d 842 (1943). If condemnor later interferes with condemnees' exercise of such common law right *without* condemnation proceedings then

such interference will constitute a second taking by inverse condemnation. See Brazos River Authority v. City of Graham, 163 Tex. 167, 354 S.W.2d 99 (1962). However, until there is such a second taking condemnor should not be required to pay compensation for an interest which has not yet been taken. See Texas Power & Light Co. v. Cole, 158 Tex. 495, 313 S.W. 2d 524 (1958).

Condemnees' mineral estate which is dominant in this case is distinguishable from the mineral estate which was expressly made subordinate to the condemned surface estate in Trinity River Authority v. Chain, 437 S.W.2d 887 (Tex.Civ.App. 1969) writ ref'd, N.R.E. The common law right of condemnees is likewise distinguishable from the unilateral promises as to future conduct of the condemnors in White v. Natural Gas Pipeline Co. of America, supra, and Willcockson v. Colorado River Municipal Water District, 436 S.W.2d 203 (Tex.Civ.App.1969) writ ref'd, N.R.E.

■ In their Conditional Application for Writ of Error condemnees-respondents contend that the condemnation of condemnees' 7.6345-acre surface estate is void for lack of consent by the City of Liberty. Condemnees rely upon Art. 8263h, Sec. 34, Vernon's Tex.Civ.Stat., which grants to a navigation district the right of eminent domain "* * * provided, that no right of way can be condemned through any part of an incorporated city or town without the consent of the lawful authorities of such city or town." It is undisputed that the City Council of the City of Liberty passed a resolution which in part states:

"WHEREAS, the Chambers-Liberty Counties Navigation District has indicated its willingness to issue revenue bonds for the purpose of acquiring the necessary property in constructing the port, with the First Phase of the development for navigation and industries to include

* * *   [certain described tracts of land];

"NOW, THEREFORE BE IT RE-SOLVED, that the City Council of the City of Liberty does hereby approve the plan for the acquisition by the Chambers-Liberty Counties Navigation District of such lands and the development of the area in cooperation with the City for Port, navigation and industrial purposes; and the council hereby encourages the land owners to cooperate with the District in making the lands available, and the Council does hereby consent for the District to acquire any of such property by eminent domain proceedings whenever necessary."

The jury found that condemnees' 7.6345 acres were within the boundaries of the land described in the City's resolution. Condemnees contend that there is no admissible evidence to support this jury finding.

We find no merit in condemnees' "no evidence" contention. Condemnees themselves introduced into evidence a Coastal Geodetic Survey map printed by the United States Government. Condemnees' own witness testified that the map was a fair representation of the area involved in this lawsuit. The map on its face shows that condemnees' 7.6345 acres are within the boundaries of the land described in the City's consent resolution.

The judgment of the Court of Civil Appeals is reversed and the judgment of the trial court is affirmed.

WALKER, Justice (dissenting).

In my opinion it is unsound to say as a matter of law that the mineral estate is not damaged. Where respondents once had the right to make *any* use of the surface that might be convenient or desirable in the exploration, development, production and storage of minerals, they will hereafter be entitled to make only such use as is reasonable under the circumstances. They may thus be required to take measures and incur expense that would not be necessary if they continued to own the surface. It is entirely possible, therefore, that the mineral estate could suffer some diminution in value as a result of the taking of the surface even though the mineral estate is dominant and the owners thereof are entitled to make a 'reasonable use of the surface in developing and producing their minerals. It seems to me that the Court of Civil Appeals has simply applied an incorrect rule of law in passing upon the weight and preponderance point. I would remand the cause to the intermediate court for reconsideration of that question.