**TARRANT COUNTY WATER CONTROL AND IMPROVEMENT DISTRICT NUMBER ONE, Petitioner,**

v.

**HAUPT, INC., Bar J B Company, Inc., and James A. Breithaupt, III, Respondents.**

No. D–2803.

Supreme Court of Texas.

June 3, 1993.

Marc O. Knisely, Shannon H. Ratliff, Austin, and Stan Harrell, and Christopher A. Troutt, Fort Worth, for petitioner.

Philip E. McCleery and Peter K. Rusek, Waco, for respondent.

## OPINION

ENOCH, Justice.

The question in this oil and gas case is whether the "accommodation" doctrine, first articulated by this court in *Getty Oil Co. v. Jones,* 470 S.W.2d 618 (Tex.1971), should be applied in determining whether inverse condemnation of a mineral estate has occurred when a governmental entity

that owns the surface estate restricts the use of the surface by the mineral owner and lessee. We hold that the accommodation doctrine applies and must be considered before a court may determine that an inverse condemnation of the mineral estate has occurred.

The trial court held that the interests of mineral owners Frances Breithaupt and Lillian Weiss were taken when the Tarrant County Water Control and Improvement District Number One (the "Water District") flooded the surface to create the Richland–Chambers Reservoir, but that the interests of mineral owner James Breithaupt, III and lessees, Bar J B Company and Haupt, Inc., were not taken or damaged. The court of appeals reversed the judgment as to all parties, rendered judgment that inverse condemnation had occurred as to all mineral owners and lessees, and remanded to the trial court for a trial on damages. 833 S.W.2d 697 (1992). The court of appeals did not consider or apply the accommodation doctrine. We reverse the judgment of the court of appeals and remand this cause to that court for consideration of the accommodation doctrine in light of the facts of this case.

## I.

In 1952, Frances and Lillian executed an oil and gas lease on an 80–acre tract.[1] This lease was subsequently assigned to Four–W Oil Company, which drilled and operated two producing wells under the lease. The wells were located at an elevation of approximately 291 feet above mean sea level. In 1981, the Water District condemned the surface of the tract below a mean elevation of 315 feet. In June 1987, the Water District condemned Four–W's working interest without condemning Frances' and Lillian's executive right to execute further leases, and plugged the producing wells. Shortly before the wells were plugged, Frances and Lillian executed top leases to Bar J B Company. These top leases took effect

when the wells were plugged and Four W's working interest terminated. In August 1988, Bar J B attempted re-entry operations on the plugged wells, but the Water District obtained a temporary injunction against Bar J B to prevent re-entry drilling. Also in August 1988, James purchased a ⅙ mineral interest in the 80 acre tract and executed a lease to Haupt, Inc. The plugged wells were inundated by the new lake in May 1989, along with approximately 68 of the 80 surface acres of the tract. Concurrently, Haupt unsuccessfully attempted to drill a directional well located on the remaining 12 acres not inundated by the reservoir.

This suit originated from the Water District's action for injunction against Bar J B to prohibit drilling activity on the inundated portion of the 80–acre tract. The suit for injunction was consolidated with the action brought by Lillian, Frances, James, Bar J B, and Haupt[2] (collectively, the "plaintiffs") for inverse condemnation damages resulting from the taking of their right to access the minerals under the surface inundated by the reservoir without compensation. The trial court made extensive findings of fact and conclusions of law, most notably that the actions of the Water District in flooding the surface did not constitute a taking of any property interest of Bar J B, Haupt, or James. The court of appeals reversed and rendered judgment that a taking had occurred as to all plaintiffs, concluding that a "partial but permanent" restriction of access to the minerals had occurred under the doctrine set forth in *City of Waco v. Texland Corp.*, 446 S.W.2d 1 (Tex.1969).

## II.

▆▆▆ The court of appeals did not address the application of the accommodation doctrine to this case. Heretofore the accommodation doctrine has been applied only between a private owner of the surface

---

1. Frances and Lillian each owned a ¼ mineral interest at all times relevant to this suit. Other than James's ⅙ mineral interest acquired in 1988, the mineral interests owned by others were not material to this litigation.

2. Bar JB and Haupt are wholly owned by Frances and James.

estate and the mineral owner. *See Getty,* 470 S.W.2d 618; *see also Robinson v. Robbins Petroleum Corp.,* 501 S.W.2d 865 (Tex.1973); *Sun Oil Co. v. Whitaker,* 483 S.W.2d 808 (Tex.1972). However, the Water District asserts that an analysis of the competing interests of the surface and mineral owners in this case cannot be complete without considering the accommodation doctrine. We agree.

■ It is a well established doctrine from the earliest days of the common law that the right to the minerals carries with it the right to enter and extract them, and all other such incidents thereto as are necessary to be used for getting and enjoying them. *Cowan v. Hardeman,* 26 Tex. 217, 222 (1862). This common law right was created "because a grant or reservation of minerals would be wholly worthless if the grantee or reserver could not enter upon the land in order to explore for and extract the minerals granted or reserved." *Harris v. Currie,* 142 Tex. 93, 176 S.W.2d 302, 305 (1944). Although the mineral estate is the dominant estate, the rights implied in favor of the mineral estate are to be exercised with *due regard* for the rights of the surface owner. *Getty,* 470 S.W.2d at 621; *General Crude Oil Co. v. Aiken,* 162 Tex. 104, 344 S.W.2d 668, 669 (1961); *Gulf Production Co. v. Continental Oil Co.,* 139 Tex. 183, 132 S.W.2d 553, 563 (1939).

■ The accommodation doctrine is based on this concept of "due regard." *Id.* at 622. The accommodation doctrine, also known as the "alternative means" doctrine, was first articulated in *Getty* as a means to balance the rights of the surface owner and the mineral owner in the use of the surface:

> Where there is an existing use by the surface owner which would otherwise be precluded or impaired, and where under

established practices in the industry there are alternatives available to the lessee whereby minerals can be recovered, the rules of reasonable usage of the surface may require the adoption of an alternative by the lessee.[3]

*Getty,* 470 S.W.2d at 622. This right of accommodation between the surface and mineral estates is dependent upon the state of the evidence and the findings of the trier of the facts. *Id.* at 623. In *Getty,* the surface owner's "most advantageous, and perhaps the only reasonable means of developing the surface for agricultural purposes" was the rolling irrigation system that was blocked by Getty's pumpjacks. *Id.* at 622. Getty had available either submerged pumps in concrete cellars or surface-mounted hydraulic pumps that were no taller than the irrigation system, which this court held to be *"reasonable* alternatives to its present use of the surface." *Id.* (emphasis added).

The burden of proof to show that the use of the surface by the lessee is not reasonably necessary is upon the surface owner. *Id.* This may be proven by showing that the lessee's use of the surface is not reasonably necessary because of non-interfering and reasonable ways and means of producing the minerals that are available, the use of which will permit the surface owner to continue the existing use of the surface. *Id.*

■ *Getty* recognizes that if there is but one means of surface use by which to produce the minerals, then the mineral owner has the right to pursue that use, regardless of surface damage. *Id.* On the other hand, if the mineral owner has reasonable alternative uses of the surface, one of which permits the surface owner to continue to use the surface in the manner intended (especially when there is only one

---

3. Other jurisdictions have followed Texas' lead in recognizing the accommodation doctrine. *See Hunt Oil Co. v. Kerbaugh,* 283 N.W.2d 131, 136–37 (N.D.1979); *Flying Diamond Corp. v. Rust,* 551 P.2d 509, 511 (Utah 1976). *See also Norken Corp. v. McGahan,* 823 P.2d 622, 628 (Alaska 1991); *Diamond Shamrock Corp. v. Phillips,* 256 Ark. 886, 511 S.W.2d 160, 163 (1974). One commentator has noted that this

case law tempering the doctrine of dominance of the mineral estate is the minority view, but is evidence of a trend toward the balancing of the interests between the surface and mineral estates. Paul F. Hultin, *Recent Developments in Statutory and Judicial Accommodation Between Surface and Mineral Owners,* 28 ROCKY MTN. MIN. LAW INST. 1021, 1066 (1983).

reasonable manner in which the surface may be used) and one of which would preclude that use by the surface owner, the mineral owner *must* use the alternative that allows continued use of the surface by the surface owner. *Id.* at 622–23. *See also* Andrew Scott Hanen, Comment, *The Surface Mineral Producer v. the Oil and Gas Producer: A Need for Peaceful Coexistence,* 29 BAYLOR L.REV. 907, 923 (1977); Dillon J. Ferguson & Ira L. Jones, II, Comment, *A New Approach to the Use of the Surface Estate by a Lessee Under an Oil and Gas Lease,* 13 S.TEX.L.J. 269, 292–93 (1972).

We extend *Getty* to hold that the accommodation doctrine applies when governmental entity is the surface owner.

### III.

Prior to *Getty,* this court stated that when a governmental entity condemns the surface but not the mineral estate, interference by the governmental entity with the mineral owner's use of the surface without condemnation proceedings constitutes a taking by inverse condemnation.[4] *Chambers–Liberty Counties Navigation Dist. v. Banta,* 453 S.W.2d 134, 137 (Tex.1970). However, this court further stated that so long as the mineral owners possess their common law right to the *reasonable* use of the surface, there is no damage to the dominant mineral estate. *Id.*

The plaintiffs argue that *Chambers–Liberty* controls this case, asserting that any interference with the use of the surface by a governmental entity constitutes a taking and that the accommodation doctrine does not apply. The Water District replies that *Chambers–Liberty* does not preclude *Getty* because mineral owners have a common law right of only *reasonable* use of the surface, implying that Haupt's attempted surface drilling is an unreasonable use of the surface. *Cf. Chambers–Liberty,* 453 S.W.2d at 137. We agree that *Chambers–*

*Liberty* is not dispositive of this case without consideration of the accommodation doctrine.

### IV.

The court of appeals relies heavily on *Texland,* 446 S.W.2d at 2, and *City of Austin v. Avenue Corp.,* 704 S.W.2d 11, 13 (Tex.1986) for the proposition that the plaintiffs' mineral estates could be damaged by restricting access via surface drilling, even though other reasonable means of access have not been restricted. *See* 833 S.W.2d at 699. Both *Texland* and *Avenue Corp.* involved restricted access between a privately owned tract of land and public streets. Neither involved the rights of surface and mineral owners.

We do not find these "street access" cases applicable in the oil and gas context because they do not involve competing ownership interests in property, each with concomitant rights of ownership. The accommodation doctrine mandates that the mineral owner's exercise of its right to use of the surface cannot unreasonably infringe on the surface owner's right of surface use if reasonable alternative surface uses are available to the mineral owner. Accordingly, we disapprove of the court of appeals' holding that a taking of the plaintiffs' mineral interests occurred even though all reasonable means of access had not been restricted.

### V.

■ Under the facts of the current case, the Water District's only means of using the surface for a reservoir is to flood the surface. The record indicates that the potential for contamination of the public drinking water supply provided by the reservoir that could be caused by surface drilling of oil wells is great enough that surface drilling could be found to be an unreasonable use of the surface.[5] Consequently,

---

4. Inverse condemnation occurs whenever property is "taken" or "damaged" for public use without adequate compensation. *See* TEX. CONST. art. I, § 17; *City of Abilene v. Burk Royalty Co.,* 470 S.W.2d 643, 646 (Tex.1971).

5. This court has illustrated how reasonableness under the accommodation doctrine is dependent on the facts of the case:

What might be a reasonable use of the surface by the mineral lessee on a bald prairie used only for grazing by the servient surface owner

if reasonable alternative drilling methods exist that protect the reservoir, then an accommodation by the mineral owners would be required.

The trial court found that Bar J B and Haupt had access to the minerals both before and after inundation of the surface by either conventional or directional drilling methods. The plaintiffs argued to the court of appeals that there was no evidence to support this finding of access, or alternatively, that this finding was against the great weight and preponderance of the evidence. The court of appeals held this finding to be immaterial in light of its holding that inverse condemnation of the minerals occurred under *Texland* and *Avenue Corp.* 833 S.W.2d at 700. We disagree. Because we hold that the accommodation doctrine applies and that *Texland* and *Avenue Corp.* do not, this finding becomes *very* material to the outcome of this case.

Several expert witnesses for both the plaintiffs and the Water District testified that restricting the means of access to only directional or platform drilling reduced the value of the plaintiffs' mineral interests to nearly zero. However, one witness testified that the minerals still had a net value of $937,500 even after considering the additional costs and risk of directional drilling. Additionally, James admitted that an economically viable platform well had been drilled on an adjoining tract of land. The trial court found that the plaintiffs had access to the minerals under the tract, although not addressing whether such access was *reasonable*, as required by the accommodation doctrine.[6] We consider this to be some evidence that the plaintiffs had reasonable access to the minerals by alternative means. Because the record contains some evidence of reasonableness, the reasonableness of the plaintiffs' access is deemed found in support of the trial court's judgment. *See* Tex.R.Civ.P. 299.

However, the plaintiffs argued to the court of appeals that the trial court's finding that they had access to the minerals was against the great weight and preponderance of the evidence. The court of appeals sustained this point of error. Because this review was conducted without regard for the accommodation doctrine, we remand this case to the court of appeals for reconsideration of the factual sufficiency of the evidence to support the trial court's finding of access and the deemed finding of reasonableness in light of the accommodation doctrine.

The evidence may indicate that surface drilling is the only manner of use of the surface whereby the minerals can *reasonably* be produced. In that event, the lessee has the right to pursue this use under the accommodation doctrine. *Getty*, 470 S.W.2d at 622. If the Water District by its use of the surface has prevented this one manner of surface use by the mineral owners in order to protect the fresh water supply, then inverse condemnation of the mineral estates has occurred, even under the accommodation doctrine. *See Getty*, 470 S.W.2d at 623; *Chambers–Liberty*, 453 S.W.2d at 137.

We reverse the judgment of the court of appeals and remand this cause to the court of appeals for proceedings consistent with this opinion.

---

could be unreasonable within an existing residential area of the City of Houston, or on the campus of the University of Texas, or in the middle of an irrigated farm.
*Getty*, 470 S.W.2d at 627. What is reasonable on a prairie might likewise be unreasonable in a public reservoir that provides drinking water.

**6.** Although the Water District argued application of the accommodation doctrine on appeal, the accommodation doctrine was not raised to the trial court.