Tarrant Co Water Control v. Fullwood 
















IN THE
TENTH COURT OF APPEALS
 

No. 10-95-053-CV

     TARRANT COUNTY WATER CONTROL AND
     IMPROVEMENT DISTRICT NUMBER ONE,
                                                                                              Appellant
     v.

     P.D. FULLWOOD, INDIVIDUALLY AND
     D/B/A P.D. FULLWOOD OPERATING 
     COMPANY, ET AL.,
                                                                                              Appellees
 

From the 13th District Court
Navarro County, Texas
Trial Court # 103-89
                                                                                                    

O P I N I O N
                                                                                                    

      This is the second appeal to come before us involving this dispute. In the first, we held that
the court had erred in granting the Tarrant County Water Control and Improvement District
Number One (the District) a take-nothing summary judgment on P.D. Fullwood, et al.'s
(Fullwood) claim that the District had inversely condemned the mineral estate underlying a portion
of the Richland-Chambers Reservoir in Navarro County and remanded the cause for trial. P.D.
Fullwood v. Tarrant County Water Control and Improvement District Number One, No. 10-92-020-CV (Tex. App.—Waco, November 18, 1992, writ denied) (not designated for publication)
(Fullwood I). On remand, the trial court ruled, after a bench trial, that the District had inversely
condemned Fullwood's mineral estate. Damages were tried to a jury, which determined that the
damages to the estate were $1,947,065. The court added $60,000, the amount of a judgment
awarded to Fullwood before the first appeal as damages for condemnation of his royalty interest
in a lease covering the same property, and rendered a final judgment in the amount of $2,007,065.
      The District appeals from this judgment, raising eleven points of error. Its first six points
argue that the court erred in finding that it had inversely condemned the minerals. We will reject
these contentions primarily because they are based on a misreading of Fullwood I. The five
remaining points attack the court's failure to award the District title to the minerals, the amount
of the judgment, and various evidentiary rulings by the court. We will affirm the judgment to the
extent it is consistent with the court's factual finding that the estate was damaged, but we will
sustain one of the District's complaints under the "one satisfaction" rule and reform the judgment
to delete the double recovery. Fullwood raises one cross-point, complaining that the court
conducted a bench trial on the inverse condemnation issue, which we will not reach.
BACKGROUND
Land, Water and Oil
      The mineral estate at issue lies under two tracts of land, totaling 316.3 acres, and is part of
the South Kerens (Woodbine) Field. Fullwood acquired the surface of the 316.3 acres from his
parents in August 1954. At that time, the mineral estate was subject to a 1943 mineral lease
executed by his parents. Fullwood inherited the reversionary interest under the lease upon his
mother's death in 1970. At the same time, she devised him a one-third interest in the one-eighth
royalty under the 1943 lease.
      In 1979, the District began acquiring the surface estate of some 45,000 acres of land for the
construction of the Richland-Chambers reservoir, a fresh-water reservoir servicing Fort Worth,
Corsicana, and the surrounding area. Fullwood conveyed the surface of the 316.3 acres to the
District in 1981 as the result of a negotiated sale in lieu of condemnation. The deed expressly
recognized the purpose of the acquisition and reserved the minerals to Fullwood, subject to the
District's right to construct, maintain, and operate the reservoir. 
      At the time of the sale of the surface to the District, Exxon Corporation and Olson Brothers,
Inc., the successors-in-interest of the lessees under the 1943 lease, maintained ten oil wells on the
land, four of which were in production. Initially, the District indicated that it did not intend to
condemn the working interests of these lessees. However, through condemnation in 1986, the
District acquired Exxon's and Olson Brothers' leasehold interests. Although the District continued
to operate the condemned working interest through its agent Pool Company and to pay the
royalties due under the 1943 lease during the fall of 1986, by April 1987 it had plugged all of the
wells on the 316.3 acres.
      The District continued to prepare the lake-bed for inundation. It cleaned up all of the well
sites located within the bed area, removed or buried pipelines, and removed electrical wires and
poles. In July 1987 the dam was closed and inundation began.
      Because the 1943 mineral lease terminated sixty days after production stopped, Fullwood
acquired ownership of the full mineral estate in May or June 1987. He began to make plans for
the production of the minerals. In May 1988 he applied for and was granted permits by the
Railroad Commission to re-enter four wells located on the property. In July, he began reentry
operations on a well referred to as the Fullwood 1-X well. On July 29, 1989, he executed a new
mineral lease with La Pesca Production, Inc. covering the full 316.3 acres. Within days La Pesca
entered into a joint development agreement with Haupt, Inc., assigning Haupt one-half of the lease
interest. During the reentry operations on the 1-X well, Fullwood encountered "junk," i.e., non-drillable material such as steel or iron, in the well bore. This material delayed completion of the
well and increased his operating expenses. After completing the reentry operations on this well,
Fullwood obtained permission from the Railroad Commission to create a 20-acre unit to support
the 1-X well's production. In anticipation of inundation for the Reservoir, Fullwood elevated the
1-X wellhead on a platform which would be above the water level.
      In early May 1989, the Reservoir reached its normal pool elevation, and all of the well sites
on the 316.3 acres were covered by water.
The Lawsuit and The First Appeal
      Fullwood, La Pesca and Haupt filed suit against the District in March 1989, alleging, among
other things, that the District had inversely condemned the mineral estate underlying the 316.3
acres, and violated its duty as the lessee under the 1943 lease to act as a reasonably prudent
operator during the period it held the working interest. Fullwood also sued Pool, the company
hired by the District to operate, plug, and clean up the well sites in the lake bed area, alleging that
it had placed the junk in the 1-X well bore and had joined the District in resisting his attempts to
obtain permits for his reentry operations. Fullwood requested that the court reform or rescind the
1981 deed's provisions regarding the mineral estate so that the deed would not hamper his right
to produce the minerals. Finally, he sought damages in an amount not to exceed $10 million.
      The District successfully sought to dispose of the majority of Fullwood's claims by summary
judgment. In one partial summary judgment, the court ruled that the District was not held to the
reasonably prudent operator standard of conduct in relation to the working interest under the
condemned lease. In a second partial summary judgment, the court ruled that the District had not
condemned Fullwood's mineral estate because the 1981 deed subordinated the mineral estate's
right of access to the District's right to impound water. However, the court reserved out of this
second summary judgment Fullwood's claims concerning his royalty interest under the 1943 lease. 
Apparently, the court later ruled that the District had condemned Fullwood's royalty interest, and
the issue of damages was tried to a jury. After the jury returned a verdict valuing Fullwood's
royalty interest over the life of the lease at $60,000, the court rendered a final judgment in
December 1991 incorporating its rulings on the earlier partial summary judgments and awarding
Fullwood the damages found by the jury. This judgment also made final a take-nothing
interlocutory summary judgment that had been granted to Pool.
      Fullwood appealed the judgment, complaining about the court's legal rulings. On November
18, 1992, we reversed the judgment. First, we concluded that the District should be held to the
reasonably prudent operator standard during the period before it abandoned the lease. In
sustaining Fullwood's attacks on the judgment as they related to inverse condemnation, under a
section heading "Restriction of Access and Reasonable Accommodation," we stated:
The deed contained the following provision to reserve the mineral interest in
Fullwood:
 
The Grantor herein reserves unto themselves, their heirs, successors and
assigns, all oil, gas and other fluid or gaseous minerals in and under the land
herein described, together with the right of ingress and egress for the purpose
of exploring for, and producing the same therefrom, subject and subordinate,
however, to the right of Grantee to construct, maintain and operate a reservoir
for impounding fresh water. Grantor, their heirs, successors and assigns, shall
prevent contamination of said reservoir during or resulting from the use and
development of the said reserved mineral estate.
 
(Emphasis added). A reservation of the mineral estate gives the grantor the dominant
estate including the right to use as much of the premises and in such a manner, absent an
express limitation, as is reasonably necessary to extract the minerals. [Ball v. Dillard,
602 S.W.2d 521, 523 (Tex. 1980).] We hold that the subordination clause contained in
the 1981 deed was such an express limitation of the dominant estate. A similar
subordination clause in a condemnation petition and judgment was interpreted by the
court in Trinity River Authority v. Chain as "completely destroy[ing] the value of the oil
and gas estate." [437 S.W.2d 887, 892 (Tex. Civ. App.—Beaumont 1969, writ ref'd
n.r.e.).] The issues of restriction of access and reasonable accommodation, however,
were not before the court in Chain.
 
In this case, Fullwood alleged that the Water District promised and represented that
it would compensate the mineral owners for wells to be capped and that it would pay the
initial cost of raising or protecting those wells to remain in production. Unlike the court
in Chain, we do not find that the subordination clause "completely destroyed the value
of the oil and gas estate." [See id.] In fact, the summary judgment evidence suggests
that the parties to the 1981 deed contemplated continued production after the Reservoir
was inundated. In Getty Oil Company v. Jones, [470 S.W.2d 618 (Tex. 1971)] the
Supreme Court was faced with seemingly irreconcilable positions; the surface owner was
unable to operate his automatic irrigation sprinkler system because of obstacles in the
form of the lessee's existing pumping units. Likewise, Fullwood is unable to produce
oil and gas under its reservation of the mineral estate because of the manner in which the
Water District constructed the Reservoir and inundated the surface.
 
Although Fullwood's right to produce the minerals was made subordinate to the
Water District's right "to construct, maintain and operate a reservoir," the clause does
not evidence an intent to convey the entire mineral estate to the Water District. Indeed,
the subordination clause itself contains a covenant by Fullwood to prevent the
contamination of the Reservoir from the use and development of his reserved mineral
estate. Even though the rights of the dominant estate were made subordinate to the rights
of the servient estate, the owner of each estate must exercise his rights with due regard
for the rights of the other. [See Warren Petroleum Corp. v. Martin, 271 S.W.2d 410,
413 (Tex. 1954).] As a result, any interference by the Water District with Fullwood's
limited right to produce the minerals, beyond that reasonably necessary to inundate the
Reservoir, constituted a taking by inverse condemnation. [See Chambers-Liberty
Counties Navigation Dist. v. Banta, 453 S.W.2d 134, 137 (Tex. 1970).] Because the
summary judgment evidence suggests that the Water District did not reasonably
accommodate Fullwood's development of the minerals, particularly in light of prior
representations that it would do so, and that the Water District's actions restricted even
Fullwood's limited access to the mineral estate, we sustain points of error one through
five.
Fullwood, No. 10-92-020-CV, slip op. at 6-8 (citations in text substituted for footnotes). Because
we sustained Fullwood's complaints relating to both partial summary judgments, we reversed the
court's final judgment and remanded the cause for trial. We also sustained his attacks on the
judgment rendered in favor of Pool and remanded those claims as well.
Developments During the Pendency of the Lawsuit and the First Appeal
      In early 1992, Samedan Oil Company obtained a permit from the Railroad Commission for
a secondary recovery project for the entire South Kerens Field. Fullwood joined other affected
landowners in executing a unitization agreement with Samedan. He contributed all of his
productive acreage, except the 20-acre 1-X unit, to Samedan's 976-acre unit in exchange for
royalty and overriding royalty interests in the Samedan Unit proceeds. Using directional drilling,
Samedan drilled three producing wells and one dry hole. The dry hole well was bottomed under
Fullwood's 316.3 acres. 
Proceedings on Remand
      On remand, Fullwood amended his petition to include an allegation, as an issue of fact, that
the District had caused him harm by "refusing to accommodate an existing use of [his] property
when reasonable accommodation was possible." In reply, the District asserted that it did not have
any duty to accommodate Fullwood's limited right to produce the minerals. Fullwood took the
position that he was entitled to a jury trial on all issues under the holdings in Fullwood I. 
Although he conceded that inverse condemnation is ordinarily a matter of law for the court to
decide, he argued that the reasonableness of the District's activity was for a jury, under both
Fullwood I and other case law. Id.; City of San Antonio v. Guidry, 801 S.W.2d 142, 145 (Tex.
App.—San Antonio 1990, no writ). The District urged the court to apply the general procedure
and to conduct a bench trial on Fullwood's inverse condemnation claims, citing, among other
authorities, our opinion in Haupt v. Tarrant Cty. Water Control, 833 S.W.2d 697, 698 (Tex.
App.—Waco 1992), rev'd on other grounds, 854 S.W.2d 909 (Tex. 1993). After considering
Guidry and Haupt, the court decided to conduct a bench trial on Fullwood's inverse condemnation
claim.
      During the three day bench trial in September 1994, Fullwood presented testimony indicating
the District had made representations to him prior to the sale of the surface that it would construct
the reservoir in such a way as to accommodate his mineral production operations. He also
attempted to show that the District was responsible for the "junk" in the wells, had destroyed the
roads and electrical-supply network leading into the reservoir area, had resisted his attempts to
obtain the necessary production permits from the Railroad Commission, and had filed two
injunctions suits against him to prevent him from proceeding with various steps of his reentry
plans. In examining Gus Frossard, a District employee who worked on the "oil and gas resolution
component" of the reservoir project, Fullwood's attorney defined "accommodate" as "[a]ssist,
provide electric service, road service, barges, levees, anything that would assist the oil producers
and in producing their minerals."
      In their post-trial briefs, the parties set out their respective positions: Fullwood argued that
the District had failed to accommodate the mineral interest owners and that the combination of its
actions had the effect of satisfying the "any interference" component of Fullwood I. The District,
on the other hand, argued that (1) Fullwood failed to show that it had acted "unreasonably," citing
Fullwood I, and (2) asserting Fullwood I required Fullwood to establish the elements of the Getty
"accommodation doctrine," that Fullwood failed to prove the elements necessary to establish his
right to recover damages. See Getty Oil Company v. Jones, 470 S.W.2d 618 (Tex. 1971). 
Somewhat inconsistently, the District also argued in its brief that the "accommodation doctrine"
did not apply because the 1981 deed expressly defined the relationship between the severed
mineral estate and surface estate (the District would reassert both of these arguments, and thus the
accompanying inconsistency, in its motion to correct the judgment filed in response to the court's
final judgment).
      After considering the briefs, the court ruled that there had "been inverse condemnation in this
case." Following that ruling, the court conducted a jury trial on the issue of damages in October
and signed a final judgment incorporating the jury's verdict on November 15. After the bench
trial, but before the jury hearing on damages, Fullwood released his claims against Pool by an
agreement which called for Pool to pay $18,000.
      On December 1 the District requested that the court make findings of fact and conclusions of
law regarding its ruling that the District had inversely condemned Fullwood's mineral estate. 
Tex. R. Civ. P. 296. When the court failed to timely file the requested findings and conclusions,
the District filed its notice of past due findings and conclusions. Id. 297. Although Fullwood
objected to the court making such findings and conclusions, pointing to his earlier objection to the
court's conducting a bench trial on the issue and to the District's insistence that the condemnation
issue was a question of law, he submitted proposed findings of facts and conclusions of law. The
District objected to Fullwood's submission, alleging that the proposed findings of fact were not
material to the "accommodation doctrine," and submitted its own proposed findings and
conclusions. The court then drafted and filed fourteen findings of fact and a single conclusion of
law to support its ruling. Neither party requested that the court file additional findings and
conclusions. This appeal followed.
ATTACKS ON THE FINDING OF INVERSE CONDEMNATION
      In its first six points of error, the District attacks the court's finding that it damaged
Fullwood's mineral estate by inverse condemnation. In points one, two, and four the District
complains that the court based its inverse-condemnation finding on the effect of inundation on
Fullwood's ability to produce the minerals. In point three, it claims that Fullwood failed to adduce
sufficient evidence to establish the elements of the "accommodation doctrine." Finally, the
District complains in point five that the court ruled based on a view that Fullwood I required it to
rule as it did and in point six that the court's findings of fact are inconsistent with, and negate, its
conclusion of law.
Inundation and Inverse Condemnation
      In point one, the District claims that the court erred by finding that inverse condemnation
occurred because the surface was inundated. In point two, the District argues that the court erred
in failing to recognize that the 1981 deed precludes Fullwood from claiming that inundation
resulted in an inverse condemnation.
      As set out above, we held in Fullwood I that the 1981 deed contained an "express limitation"
on the mineral estate so that "Fullwood's right to produce the minerals was made subordinate to
the District's right ‛to construct, maintain and operate a reservoir[.]'" Fullwood, No. 10-92-020-CV, slip op. at 6, 7. Thus, under the "law of the case" doctrine, inundation alone is not a
sufficient basis for Fullwood's inverse-condemnation claim. Hudson v. Wakefield, 711 S.W.2d
628, 630 (Tex. 1986). We remanded the cause for a determination of whether the District
interfered with Fullwood's access to the minerals "beyond that reasonably necessary to inundate
the Reservoir." Fullwood, No. 10-92-020-CV, slip op. at 8 (emphasis added). The court was
required to answer this question during the bench trial on Fullwood's condemnation claim.


 The
District has failed to demonstrate that the court erroneously ignored our directions in Fullwood
I, and we will not presume that it rendered judgment on a theory precluded by our earlier opinion. 
See Hudson, 711 S.W.2d 630; Texas Dept. of Public Safety v. Raffaelli, 905 S.W.2d 773, 776
(Tex. App.—Texarkana 1995, no writ h.); Harrell v. Harrell, 700 S.W.2d 645, 647 (Tex.
App.—Corpus Christi 1986, no writ). Thus, points one and two are overruled.
      In point four, the District complains that there is insufficient evidence to support the court's
finding that inundation increased the cost of production and that this finding is immaterial. We
agree that the finding is immaterial under our prior opinion. Fullwood, No. 10-92-020-CV, slip
op. at 7-8; see also Fleet v. Fleet, 711 S.W.2d 1, 2 (Tex. 1986) (jury issue is immaterial if it
"cannot alter the effect of the verdict"). Thus, this point does not present an argument on which
effective relief may be granted and is overruled.
The Getty Accommodation Doctrine
      In point three, the District claims that the evidence is insufficient to establish the elements of
the "accommodation doctrine" as set out in Getty Oil Company. Getty, 470 S.W.2d at 622. The
District asserts that our reference to Getty and the concept of accommodation in Fullwood I had
the effect of holding that the accommodation doctrine was applicable to this suit and placing the
burden on Fullwood to prove its elements. See Fullwood, No. 10-92-020-CV, slip op. at 6-8. 
Thus, the District argues, the evidence is insufficient because Fullwood failed to show an existing
use of the surface which the District could reasonably accommodate by using some established
alternative practice for building and maintaining the reservoir. Getty, 470 S.W.2d at 622.
      We do not read Fullwood I as does the District. We recognized there that the parties had
expressly defined their relationship in the 1981 deed, thus taking this dispute out of the implied
rules set out in Getty. Fullwood, No. 10-92-020-CV, slip op. at 6 ("We hold that the
subordination clause contained in the 1981 deed was . . . an express limitation of the dominant
estate" (emphasis added)); also Tarrant County Water Control v. Haupt, 854 S.W.2d 909, 911
(Tex. 1993); Getty, 470 S.W.2d at 621. Even if the accommodation doctrine were to apply, the
District's complaint would not be valid because "[a]ny failure of proof [on the elements of
accommodation] falls on the Water District [as the surface owner], not the plaintiffs [as the
mineral estate owner]." Haupt v. Tarrant County Water Control, 870 S.W.2d 350, 353 (Tex.
App.—Waco 1994, no writ). 
      Regardless, Fullwood I held that Fullwood could not recover for damages to his mineral estate
caused solely by the District's reasonable actions in creating the reservoir. However, if Fullwood
demonstrated that the District engaged in conduct which went beyond those acts reasonably
necessary to the construction and operation of the reservoir, he was entitled to prevail on his
inverse-condemnation claim. Fullwood, No. 10-92-020-CV, slip op. at 8 (citing Chambers-Liberty
Counties Navigation Dist. v. Banta, 453 S.W.2d 134, 137 (Tex. 1970); Warren Petroleum Corp.
v. Martin, 153 Tex. 465, 271 S.W.2d 410, 413 (1954)). We did not require that he establish the
elements of the Getty accommodation doctrine to prevail on his claim. See id. Therefore, the
District's complaint about the sufficiency of the evidence to establish those elements is irrelevant
to the merits of this appeal. Hudson, 711 S.W.2d 630; Raffaelli, 905 S.W.2d at 776; Harrell, 700
S.W.2d at 647. Accordingly, point three is overruled.
Dictated Ruling
      In point five, the District contends that the trial court erred by finding that the District had
damaged a portion of Fullwood's mineral estate because the court appeared to conclude that
Fullwood I dictated such a ruling. However, the District has not shown that it raised this theory
in the trial court. Thus, it cannot attack the court's ruling on this basis before this court. Tex.
R. App. P. 52(a); Regan v. Lee, 879 S.W.2d 133, 136 (Tex. App.—Houston [14th Dist.] 1994,
no writ); Winters v. Arm Refining Co., Inc., 830 S.W.2d 737, 738-39 (Tex. App.—Corpus Christi
1992, writ denied). Additionally, such a complaint is necessarily based on a presumption that the
court incorrectly applied the law set out in our opinion, a presumption we decline to indulge.


 See
Hudson, 711 S.W.2d 630; Raffaelli, 905 S.W.2d at 776; Harrell, 700 S.W.2d at 647. Point five
is overruled.
Inconsistent Findings and Conclusion
      In point six the District complains that the court's findings of fact are inconsistent with, and
negate, its sole conclusion of law. Again, the District has not shown where it raised this theory
in the trial court and it cannot raise the argument before us for the first time. Tex. R. App. P.
52(a); Winters, 830 S.W.2d at 738-39. Point six is overruled.
TITLE TO THE MINERAL ESTATE
      In point seven, the District attacks the court's failure to provide in the judgment that it will
acquire title to the mineral estate upon payment of the damages awarded to Fullwood. In the sole
"conclusion of law," the court stated, "[b]ased on the Court of Appeals opinion in this cause, and
based on other facts in this cause, at least a large part of the mineral interest was damaged by
inverse condemnation." (Emphasis added). In Fullwood I, we specifically ruled that the deed did
not destroy the value of the mineral estate. Fullwood, No. 10-92-020-CV, slip op. at 7. The
court's finding in this regard is consistent with our opinion.
      Article I, section 17 of the Texas Constitution provides, in pertinent part: "No person's
property shall be taken, damaged or destroyed for or applied to public use without adequate
compensation being made . . . ." Tex. Const. art. I, sec. 17. "It is well-settled in Texas that the
‛government's duty to compensate for damaging property for public use . . . [is] not dependent
upon the transfer of property rights.'" State v. Biggar, 873 S.W.2d 11, 13 (Tex. 1994) (citing
Steele v. City of Houston, 603 S.W.2d 786, 790 (Tex. 1980); G., C. & Santa Fe R. R. Co. v.
Eddins, 60 Tex. 656, 663 (1884)). Thus, a landowner may recover damages even if an actual
"taking" did not occur. Id.
      The District has not attacked the court's conclusion that the mineral estate was damaged, not
taken. Regan, 879 S.W.2d at 136; Winters, 830 S.W.2d at 738-39. Whether the mineral estate
was "damaged" versus "taken" is a question of intrusion and, thus, factual in nature even though
the court makes the determination as a matter of law. Compare McCammon & Lang Lumber Co.
v. Trinity & B. V. Ry. Co., 104 Tex. 8, 133 S.W. 247, 249 (1911) (a taking "includes the
appropriation of that thing . . . by actual physical possession") with DuPuy v. City of Waco, 396
S.W.2d 103, 108 (Tex. 1965) ("by damages is meant every loss or diminution of what is a man's
own, occasioned by the fault of another, whether this results directly to the thing owned, or be but
an interference with the right which the owner has . . . ." (internal quotations omitted)); also Scott
v. City of Robinson, 404 S.W.2d 330, 332 (Tex. Civ. App.—Waco 1966, writ ref'd n.r.e.). 
Although the court made the finding in a "conclusion of law," the essential factual essence of the
finding remains unchanged. McAshan v. Cavitt, 149 Tex. 147, 229 S.W.2d 1016, 1020 (1950);
Shirey v. Albright, 404 S.W.2d 152, 157 (Tex. Civ. App.—Corpus Christi 1966, writ ref'd
n.r.e.). Thus, the District is required to defeat the court's factual finding that the estate was
"damaged" instead of "taken." Id.; Des Champ v Featherston, 886 S.W.2d 536, 541 (Tex.
App.—Austin 1994, no writ); Wade v. Anderson, 602 S.W.2d 347, 349 (Tex. Civ.
App.—Beaumont 1980, writ ref'd n.r.e.). Having failed to do so, it may not complain that the
court rendered a judgment consistent with that finding. See Steele, 603 S.W.2d at 789-90; Trinity
River Authority v. Chain, 437 S.W.2d 887, 892-93 (Tex. Civ. App.—Beaumont 1969, writ ref'd
n.r.e.). Point seven is overruled.
 
ATTACKS ON THE AMOUNT OF THE DAMAGES AWARD
      In point eight, the District argues that the court should have reduced the damages awarded to
Fullwood for a variety of reasons. Although this is a multifarious point, we will address each
contention in turn. Tex. R. App. P. 74(p).
Measure of Damages
      Initially, citing the doctrines of estoppel by judgment, res judicata and collateral estoppel, the
District contends that Fullwood's damages should have been calculated in proportion to the
$60,000 condemnation award for his royalty interest under the 1943 lease. Under the District's
theory, the $60,000 award represented 1/24th of the total value of the mineral estate. Thus,
according to the District, Fullwood's total recovery should be limited to $1,440,000 (24 x
$60,000).
      However, the District did not plead these theories in its answer; therefore, they are waived. 
Tex. R. Civ. P. 94; Austin Transp. Study v. Sierra Club, 843 S.W.2d 683, 688 (Tex.
App.—Austin 1992, writ denied). Additionally, the District has waived these claims because, by
failing to provide argument on how the theories apply to this cause, it has not adequately briefed
the issues. Tex. R. App. P. 74(f); Missouri Pacific R. Co. v. Lemon, 861 S.W.2d 501, 528 (Tex.
App.—Houston [14th Dist.] 1993, writ dism'd by agr.). For both reasons, this contention is
overruled.
One Satisfaction Rule
      The District next claims that it is entitled to an offset for three different sums of money under
the "one satisfaction rule." Stewart Title Guar. Co. v. Sterling, 822 S.W.2d 1, 5 (Tex. 1991). 
"The one satisfaction rule applies to prevent a plaintiff from obtaining more than one recovery for
the same injury." Id. at 7. 
      The District first argues that the judgment should be reduced by the amount Fullwood has
been paid as royalties under the Samedan unitization agreement. It reasons that Fullwood is being
compensated by those payments for "the same oil" as the jury's award for damages in this cause. 
However, the one satisfaction rule applies to compensation from multiple tort feasors for the same
injury. Id. Royalty payments under a new lease with an unrelated entity do not compensate for
an injury, rather, they are payments made to the mineral estate owner for the use of his production
rights.
      Next, the District argues that the judgment should be reduced by $60,000 to reflect the
amount awarded to Fullwood as compensation for his royalty interest under the 1943 lease. 
Again, it argues that this sum compensates Fullwood for the "same oil." However, the $60,000
award compensated Fullwood for the destruction of his interest under the lease, the second award
compensated him for damages to his access to the minerals as the mineral owner. These are
injuries to two distinct interests owned by Fullwood. Thus, he sustained two injuries and the one
satisfaction rule is not applicable to these two awards. Id.
      Finally, The District claims that it is entitled to an offset for the $18,000 Fullwood received
from Pool Oil Company in settlement of his claims against Pool. Fullwood sued Pool claiming
that it had damaged his mineral estate by "junking" the well holes when it plugged the oil wells
in the lake bed area by leaving non-drillable material in the bores and had unlawfully interfered
with his ability to obtain a permit from the Railroad Commission. Between the bench trial on
inverse condemnation and the jury trial on damages, Pool paid Fullwood $18,000 to settle their
dispute. All of the acts Fullwood alleged against Pool are included in the acts alleged against the
District. The injury Fullwood claimed he suffered from those acts—acts that "proximately caused
an unreasonable and unnecessary impairment, restriction and denial of access to the mineral
estate"—are identical to the injuries he claimed were inflicted on him by the District. Thus, we
agree with the District that Fullwood has received a double recovery to this extent. Id. Therefore,
we sustain point 8(c) and will reform the judgment to credit the $18,000 paid to Fullwood by Pool.
EVIDENTIARY RULINGS COMPLAINTS
      In points nine, ten, and eleven, the District complains that the court excluded evidence
relating to the Samedan Unit production. These points are listed in the points of error section of
the brief, but are not mentioned again. The District has not provided record cites, arguments, or
authorities to support these complaints and, thus, we consider them abandoned. Tex. R. App. P.
74(f); Emery v. Rollins, 880 S.W.2d 237, 238 (Tex. App.—Houston [14th Dist.] 1994, writ
denied). Points nine, ten and eleven are overruled.
FULLWOOD'S CROSS-POINT
      Fullwood raises one cross-point complaining that the court refused to hold a jury trial on all
issues, including whether the District had unreasonably interfered with his limited right of access
to the minerals. However, he raises this point conditioned on our sustaining the District's
evidentiary sufficiency complaints and remanding the cause for a new trial. Because we have
overruled all of the District's points on which Fullwood conditioned his cross-point, we will not
address it.
DISPOSITION
      Because we have sustained the District's claim relating to the $18,000 settlement with Pool,
we reform judgment as follows. The second full paragraph on page three of the judgment is
reformed to read:
      Prior to the beginning of the trial on October 10, 1994, the Plaintiffs and Defendant
POOL COMPANY announced to the Court that the Plaintiffs and POOL COMPANY
had settled all issues between them. Following said announcement, the Court entered an
Agreed Order of Dismissal With Prejudice as to POOL COMPANY. However, because
the settlement moneys paid by POOL COMPANY are compensation for the same injury
as that caused by the Defendant TARRANT COUNTY WATER CONTROL AND
IMPROVEMENT DISTRICT NUMBER ONE, the amount found by the jury as the
reduction in the fair market value of the mineral estate resulting from the inverse
condemnation is reduced to reflect an Eighteen Thousand and No/100 ($18,000) Dollars
credit. 
The second full paragraph on page four of the judgment is reformed to read:
It is further ORDERED, ADJUDGED and DECREED by the Court that P. D.
FULLWOOD, INDIVIDUALLY and D/B/A P. D. FULLWOOD OPERATING
COMPANY, LA PESCA PRODUCTIONS, INC. and HAUPT, INC., jointly, have and
recover actual damages from TARRANT COUNTY WATER CONTROL AND
IMPROVEMENT DISTRICT NUMBER ONE in the sum of One Million Nine Hundred
Twenty-Nine Thousand Sixty Five and No/100 ($1,929,065.00) Dollars plus pre-judgment interest at the rate of ten (10%) percent per annum on the sum of One Million
Nine Hundred Twenty-Nine Thousand Sixty Five and No/100 ($1,929,065.00) Dollars,
from May 1, 1989, until the date of this Judgment.
The third full paragraph on page four of the judgment is likewise reformed to read:
      It is further ORDERED that the judgment hereby rendered shall bear interest at the
rate of ten (10%) percent compounded annually on each of the following sums: (a) the
sum of Sixty Thousand and No/100 ($60,000) Dollars plus pre-judgment interest thereon
(as set forth above) and (b) the sum of One Million Nine Hundred Twenty-Nine
Thousand Sixty Five and No/100 ($1,929,065.00) Dollars plus pre-judgment interest
thereon (as set forth above), from the date of judgment until paid.
Otherwise, all of the District's complaints are rejected and its points overruled. As reformed, the
judgment is affirmed.

                                                                                 PER CURIAM
 

Before Justice Cummings, and
          Justice Vance
Reformed and affirmed
Opinion delivered and filed March 20, 1996
Do not publish